STATE of Missouri, ex rel. MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Plaintiff/Appellant,

v.

JIM LYNCH TOYOTA, INC., et al. Exceptions of Kimco Development Corporation, Defendant/Respondent.

No. 59975.

Missouri Court of Appeals, Eastern District, Division Four.

April 14, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 12, 1992.

Application to Transfer Denied June 30, 1992.

Rich Tiemeyer, Chief Counsel, Paul R. Sterrett, Government Counsel, Paul R. Ferber, St. Louis, Gregory Wayne Schroeder, Jefferson City, for plaintiff, appellant.

Bryan, Cave, McPheeters & McRoberts, Thomas C. Walsh, Thomas E. Wack and Gerald T. Carmody, Sheila O. Hunsicker, St. Louis, for defendant, respondent.

KAROHL, Judge.

The Missouri Highway and Transportation Commission (Commission) appeals from a judgment on a jury verdict which awarded Kimco Development Corporation (Kimco) approximately ten times the damages allowed by the condemnation Commissioners, approximately twenty times the damages found by the Commission's expert testimony, but just over half the damages

proven by Kimco's evidence. This case involves a taking of approximately twenty thousand square feet of land along the southern and western borders of Kimco's 11.9 acre parcel. Both parties filed exceptions to the Commissioner's award.

The property is located in the northeast quadrant of the intersection of Taylor Road and Lindbergh Boulevard. In 1970, Kimco constructed a strip shopping center on the property. It rented to a number of tenants including K–Mart and Walgreens.

Prior to the taking, Kimco's property had four entrances. One entrance was accessible only to northbound Lindbergh traffic because of a median. There were three Taylor Road entrances. The taking involved 16,950 square feet along the Lindbergh border and 3,311 square feet along Taylor.

The condemnation was part of a highway project to eliminate traffic congestion at the intersection of Lindbergh and Taylor. The Commission constructed an overpass at the intersection so that traffic on Taylor will travel under Lindbergh. There is an entrance ramp on Taylor which allows traffic to go north on Lindbergh and an exit ramp which allows southbound Lindbergh traffic to drive down onto Taylor.

After the taking, Kimco's property had two entrances. Access to Lindbergh was totally eliminated. Of the two remaining Taylor entrances, the one closest to Lindbergh is now accessible only to westbound Taylor traffic because of a median.

Kimco offered evidence in support of its theory that the condemnation deprived customers of tenants access to Lindbergh and this destroyed the retail viability of the property so that the highest and best use of the property as a shopping center was lost. Kimco's expert testified that after the taking the highest and best use of the property would be light industrial. In his opinion, market value before the taking was by one approach five million dollars, and by another 4.8 million dollars. After the taking he opined the market value to be 1.1 million dollars. He concluded that the taking "dramatically" reduced the market value of the shopping center because the

denial of direct access to Lindbergh made it impossible "to attract and commit major tenants to execute commitments to tenant the property." Kimco also offered two witnesses with considerable experience in purchasing, selling and developing shopping centers. They agreed the taking destroyed the use of the property as a retail center.

The testimony of these witnesses involved their consideration of the elements of access, visibility, the median, loss of traffic and circuity of travel in forming their conclusion. Much of this evidence was the product of cross-examination by the Commission. The court consistently overruled objections to evidence of these elements which the trial court said it believed were "non-compensable individually, ... [but admissible] only as they affect the total value of the property before and after...."

The Commission's expert testified the changes caused by the condemnation did not affect the highest and best use of the property as a strip shopping center. In his view the property value before taking, by a cost approach and a comparable sale approach, was $5,129,000. He considered the land to be worth four dollars per square foot before the taking and on that basis opined total damages of $109,000 for the land taken. He allowed no damages for loss of access because it was not relevant in the present case.

The Commission appeals claiming it is entitled to a new trial based on trial court error: (1) in the admission of evidence; (2) by refusing withdrawal instructions of the evidence improperly admitted; (3) in admitting hearsay evidence over objection; (4) in refusing to submit a mandatory MAI instruction; and (5) by permitting cross-examination of its appraiser on an incompetent matter. We affirm.

Two of the Commission's claims of trial court error involve arguments that the court erred in admitting evidence. First, it argues error in the admission of evidence due to loss of traffic, circuity, inconvenience of travel, placement of a median barrier, and loss of visibility. It argues these items are not compensable in a partial tak-

ing condemnation case. Second, it claims error in the allowance of evidence of lost business, lost profits and lost rentals. The Commission asserts these matters are speculative and conjectural in a case where fair market value is otherwise ascertainable and Kimco's business, with its potential profits, has not been taken.

The Commission relies on *State ex rel. State Highway Commission v. Meier*, 388 S.W.2d 855 (Mo. banc 1965) and *State ex rel. State Highway Commission v. Brockfeld*, 388 S.W.2d 862 (Mo. banc 1965). *Meier* holds the various elements are not separately compensable. To the extent any of these elements of loss are common to other members of the public, and not items of damage special to a property owner, they are not compensable. *Meier*, at 858–859. Kimco did not dispute this rule in the trial court. Kimco responds the rule is inapplicable. It argues the Commission misperceived the nature and purpose of the evidence because Kimco never claimed a right to compensation for the taking of these elements. Kimco offered no value evidence for any of these elements.

 We review a claim of error in admitting or excluding evidence on the basis of an abuse of discretion resulting in substantial and obvious injustice. *Del–Mar Redevelopment Corporation v. Associated Garages, Inc.*, 726 S.W.2d 866, 869 (Mo.App.1987). In condemnation cases the better practice is to allow the jury to hear and weigh as much relevant and material evidence relating to value as possible. *Land Clearance Redevelopment Authority v. Kansas University & Endowment Ass'n*, 797 S.W.2d 495, 497 (Mo.App.1990).

 Certainly, evidence as to the highest and best use of a piece of property subject to condemnation is relevant in determining the value of the property before taking. *State ex rel. Kolb v. County Court of St. Charles*, 683 S.W.2d 318, 322 (Mo.App.1984). In the present case the challenged evidence, including the elements considered in determining highest and best use by Kimco's witnesses, was probative on the issue. Mention of elements not separately compensable was approved in *State ex rel. State Highway Commission v. Galeener*, 402 S.W.2d 336, 340 (Mo.1966). The court there acknowledged "that noise and speed, increased traffic and their resulting inconveniences are neither elements of damages nor of benefits and they are not proper matters of proof or for the jury's consideration.... But, even though inconvenience ... is not an element for which the landowner may be compensated, it may with other factors affect future use and therefore market value...." *Id.*

We found in *State of Missouri ex rel. Missouri Highway & Transportation Commission v. Mosley*, 697 S.W.2d 247, 248 (Mo.App.1985) that there is a "distinction between consideration of such elements [loss of privacy and circuity of traffic] as separate individual elements of damage and as mere factors combining to cause a diminution of market value." In *Mosley*, the trial court allowed such evidence as support for "consequential damage" but not for any specific damages. The trial court in the present case held the same view and ruled the Commission's objections on the same basis. We find no error in the limited admission of evidence of the various elements which Kimco's witnesses testified they considered in arriving at their opinions of consequential damages stated in terms of fair market value.

> When part of a tract of land is condemned, the appropriate measure of damage is the difference between the fair market value of the entire property before the taking and the fair market value after the taking. *Kamo Elec. Co-op. v. Baker*, 287 S.W.2d 858, 861, 365 Mo. 814 (1956). Any factor that has a present, quantifiable effect on the market value of the property is proper as an element of damages (citations omitted). Moreover, the depreciation in market value due to a risk of harm [a possibility of future flooding] is recoverable in a condemnation proceeding.

*State ex rel. Missouri Highway & Transportation Commission v. Horine*, 776 S.W.2d 6, 12 (Mo. banc 1989). *Horine* recognizes the propriety of the recovery of consequential damages where a landowner

is entitled to direct damages as a result of a loss of his property. *Id.* at 10.

The court properly admitted evidence of the various elements of loss considered by Kimco's witnesses in their determination of consequential damage which resulted from the destruction of the property's highest and best use. These witnesses never assigned a value to any of these elements and Kimco never claimed separate damages for them. The witnesses "lumped" these elements and concluded that the highest and best use of the property as a strip shopping center was no longer viable after the taking. As a result, the fair market value was reduced from 4.8 to 1.1 million dollars and the damages were 3.7 million dollars. This was approved in *State ex rel. State Highway Commission v. Nickerson*, 578 S.W.2d 916, 919 (Mo. banc 1979), where the court distinguished *Brockfeld* and *Meier* because they considered diversion of traffic as a special item of change. The Commission's first two points regarding improper admission of evidence are denied.

■■■ The Commission also argues the court erred in admitting evidence from Kimco's expert regarding his reference to an income approach in valuing the property. Such evidence may not be received in a partial taking as proof of damages. *State ex rel. State Highway Commission v. Mann*, 624 S.W.2d 4, 10 (Mo. banc 1981). Here also, Kimco does not dispute the rule of law; it contends the rule has no application in the present case. For a number of reasons we agree. First, Kimco's expert, John Hottle, testified he appraised the property before the taking on the basis of both a market value approach and an income approach. He assigned the greater value of five million dollars on the market value approach and a lesser value of 4.8 million on the income approach. The value after the taking of 1.1 million dollars was based only on a market value approach. Accordingly, Hottle's conclusion of total damages of 3.7 million dollars included only a pre-taking value based upon considerations of income. The 4.8 million dollar value did not prejudice the Commission because it was lower than the appraisal based

on fair market value. Furthermore, the Commission's expert also determined the before taking value to be higher than 4.8 million dollars. Second, the evidence showed no relation to the after taking value and loss of income. Kimco's theory, supported by its evidence, was that the taking destroyed the higher value of a strip shopping center leaving a subsequent lesser use. Point denied.

■■■ The Commission's next argument relates to the refusal of the court to give a number of withdrawal instructions involving loss of visibility evidence, the effect of a median barrier, loss of traffic, circuitous travel, loss of business by tenants, loss of rental income and inconvenience of travel. This position fails because the evidence alluded to was properly admitted for the limited purpose of explaining the affect of these elements on the value of the property because they may affect highest and best use. A withdrawal instruction may be given only when there is evidence of a false issue, improper evidence or evidence of an abandoned issue. MAI 34.01 [1978 Revision]. The requirements for submission of a withdrawal instruction on each element are not met here. Each element was relevant to Kimco's theory that the taking involved the loss of access to Lindbergh and the other resulting circumstances which destroyed future use of its property as a shopping center.

■■■ The Commission's argument that the court erred in admitting a letter from Walgreens, a tenant of Kimco and addressed to Kimco, is without merit. The claim on appeal is the letter contained double hearsay, did not meet the business records exception to the hearsay rule, was incompetent, and was not evidence on the only relevant issue in the trial, value of the property. The letter involved acceptance by Walgreens of Kimco's offer to extend its right under its lease to terminate the lease on six months notice. It memorialized a conversation between a representative of Kimco and a representative of Walgreens. Kimco offered the extension in order to encourage Walgreens not to exercise its right to cancel because of the clos-

ing of access to Lindbergh. The extension offered Walgreens an opportunity to determine what affect the denial of direct access would have on its business before deciding whether to stay.

The Commission's objection in the trial court to the admission of the letter was that it was not a business record of Kimco. Rather, it was a letter received from another company and Kimco's agent could not testify to the accuracy of its contents. Commission's counsel asserted, "I obviously cannot cross-examine anybody from Walgreens or anybody else because this is a business record of Walgreens and not of Kimco and I would base my objection *on this witness not being qualified* as a custodian of that record." Kimco responds that the letter was properly admitted to show the state of mind of the agent of Walgreens who authored the letter and because it was a business record of Kimco. The latter response depends upon further evidence that after receipt of the letter an agent of Kimco also signed the letter and treated it as an amendment to the Kimco–Walgreen's lease. As such it became a business record of Kimco. It is not clear what the letter proved except that Walgreens was prepared to give Kimco notice to terminate the lease because of anticipated adverse conditions resulting from denial of direct access to Lindbergh. Such evidence of state of mind was relevant to Kimco's theory that the viability of the shopping center was destroyed as a result of the taking.

We conclude that Kimco's witness was a qualified custodian of the exhibit, a business record of Kimco; it contained evidence from which the jury could infer Walgreens' intent to cancel its lease because of the taking. Moreover, the specific objection at trial was the witness was not qualified and the letter was not a business record of Kimco. As a written and signed amendment to a lease it was, for some purposes, a business record of both Walgreens and Kimco. The witness was a Senior Vice-President of Kimco and a lawyer. He testified without objection the letter was incorporated into Walgreens' lease and he had personal knowledge of its contents by "vir-

tue of [his] capacity as an officer of Kimco." The point on appeal is not supported by an objection before the trial court on the same grounds. The trial court properly ruled. Point denied.

The Commission argues it was error to admit into evidence a written appraisal report prepared by Thomas F. Mader based on evidence of John Hottle who was the witness at trial because the report was hearsay, double hearsay, contained improper and inadmissible evidence, lacked foundation and summarized only a part of the testimony. The Commission contends that Mader prepared the appraisal and that Hottle was merely a review appraiser.

However, the Commission objected to the report only because "the appraisal is a summary and just a summary of the direct testimony and on that basis should not be given to the jury." There was no complaint regarding hearsay, no reference to improper or inadmissible evidence, or to the absence of foundation. To that extent this argument is not based upon preserved error. *Frey v. Barnes Hospital,* 706 S.W.2d 51, 56 (Mo.App.1986).

The complaint about summarization is insignificant. The appraisal report was offered after Hottle testified and added nothing new. Significantly, valuation opinions in condemnation cases which of necessity rely on third party sources are admissible as an exception to the hearsay rule. *See Estate of Pearl v. Director, Missouri State Division of Welfare,* 538 S.W.2d 922, 927 (Mo.App.1976). The Commission has previously argued for inclusion of such evidence. *See State ex rel. State Highway Commission v. Bloomfield Tractor Sales, Inc.,* 381 S.W.2d 20, 24 (Mo.App. 1964). In the present case the report was properly authenticated and properly admitted.

The Commission's next claim of error is the court refused an offered instruction based upon MAI 34.03. The point on appeal states: "THE TRIAL COURT ERRED IN REFUSING INSTRUCTION NUMBER 16 WHICH WITHDREW EVIDENCE OF GENERAL DETRIMENTS CONFERRED

UPON ALL PROPERTY WITHIN USABLE RANGE OF THE HIGHWAY, ON THE BASIS THAT M.A.I. 34.03 MAKES THE GIVING OF THIS INSTRUCTION MANDATORY."

The Commission did not specifically object at trial to the giving of Instruction No. 16 because it was mandatory. The reason given during the instruction conference was the instruction withdrew evidence improperly admitted according to *Meier*, 388 S.W.2d 855. In its motion for new trial the Commission stated, "the court erred in refusing instruction No. 16 which withdrew evidence of general detriments conferred upon all property within the usable range of the reconstruction of Lindbergh Blvd. and Taylor Road intersection." The motion for new trial did not challenge the trial court's decision to refuse Instruction No. 16 based on the fact it was a mandatory instruction. Thus, this issue is raised for the first time on appeal.

■ Rule 70.03 requires specific objections to instructions to be made in motions for new trial unless they were previously made at trial. The same is required by Rule 78.07. The requirements of these rules are designed to afford the trial court an opportunity to correct its errors without the delay and expense of an appeal; they are to be strictly enforced. *Belter v. Crouch Brothers, Inc.*, 554 S.W.2d 562, 563 (Mo.App.1977). "If on appeal an alleged error relating to an instruction differs from or is not included in the specific objections made to and determined by the trial court, it may not be reviewed by the appellate court." *Id.* Thus, we find the Commission's seventh point is not preserved for review.

■ The allegation in the motion for new trial is general. Such a general objection is sufficient only when a definite objection is made during trial. Rule 78.07. The only specific objection during the trial in this case was to an instruction improperly refused based on *Meier*. This objection did not relate to a general detriment instruction that was mandatory.

The memorandum in support of the motion for new trial does mention the mandatory instruction argument as presented in *State ex rel. State Highway Commission v. Southern Development Co.*, 509 S.W.2d 18 (Mo.1974). This memorandum, however, is not incorporated in the motion for new trial. Since the argument is not referenced in the motion, and the accompanying memorandum is not incorporated into the motion, we find a specific objection as required in this case by Rule 70.03 and Rule 78.07 was not made in the motion for new trial. Therefore, there is nothing for this court to review.

■ Even if the point had been preserved we find no merit in the Commission's argument. Instruction No. 16 at issue here, states:

In determining the value of defendant's remaining property, you must not consider any general detriments which is conferred upon all property within usable range of the reconstruction of the Lindbergh Blvd. and Taylor Road intersection.

The Commission relies on *Southern Development Co.*, 509 S.W.2d at 18. In *Southern Development Co.*, the court rejected an argument that the instruction was not warranted because there was no evidence of general benefits. The court stated the instruction "should have been given" even if there was no such evidence. *Id.* at 24. It relies on MAI 34.03 and argues this opinion is relevant because the instruction applies to both general benefits and general detriments. Thus, the Commission contends, both should be excluded when considering condemnation damages.

Kimco responds that *Southern Development Co.* is applicable only to cases involving general benefits, not general detriments. It reasons the general benefits instruction would ordinarily be submitted at the request of a property owner in a condemnation case in order to protect against the possibility the jury would deduct some amount from the damage award because of a perceived general benefit from the improvements after condemnation. However, the notes on use for MAI 34.03 provide, "if there is evidence of general detriments,

they may be withdrawn in the same way." Where general detriments are the subject, a condemning authority would ordinarily request the instruction. *Kimco* failed to address why the condemning authority should not be protected from the possibility a jury may improperly increase the award of damages due to a perceived general detriment.

We find the opinion in *Southern Development Co.* resolves any dispute that MAI 34.03 must be given if supported by evidence, whether the subject matter is general benefits or general detriments. *See also State ex rel. Missouri Highway & Transportation Comm'n v. Mertz,* 778 S.W.2d 366, 368 (Mo.App.1989). The same is true even where there is no evidence to withdraw. *Southern Development Co.,* 509 S.W.2d at 24. Thus, we conclude the court erred in not giving the requested instruction.

 Rule 70.01(c) necessitates a determination of whether this error is prejudicial. The Commission claims prejudice in the court's refusal to give this instruction because refusal denied it an opportunity to argue the instruction. We cannot review this narrow claim of prejudice because the Commission did not furnish this court with a transcript of the closing argument. For that reason it is not possible to determine whether the Commission was foreclosed by refusal of Instruction No. 16 from arguing its position regarding general detriments. Moreover, the trial court refused *Kimco* 's motion in limine which was intended to restrict arguments and exclude a general detriment argument. The Commission argued to the court during the motion, "I certainly can argue from the evidence whatever, whatever I so choose." The trial court agreed and overruled the motion. Accordingly, we cannot say the court's refusal of instruction No. 16 prevented the Commission from arguing that the jury should not consider any general detriment common to other landowners in the vicinity of the condemnation and to Kimco as additional damages. Point denied.

The Commission's final allegation of error is the court erred in allowing cross-examination of the Commissions' expert regarding an inverse condemnation suit in which he was prepared to testify as an expert for an owner of a shopping center on the issue of damages resulting from denial of access. The Commission finds error in that Kimco did not lay a foundation for the comparability of the facts and issues in the cases. Hence, the allowed cross-examination created prejudicial, improper inferences against the Commission.

 The trial court has broad discretion in control of cross-examination and great latitude is allowed in the cross-examination of a witness with respect to credibility. *State v. Leisure,* 749 S.W.2d 366, 378 (Mo. banc 1988). Cross-examination regarding other lawsuits has been approved. *Castle v. Modern Farm Equipment Co.,* 729 S.W.2d 650, 653 (Mo.App.1987). These rules have been applied in condemnation cases. *See Board of Public Buildings v. GMT Corp.,* 580 S.W.2d 519, 531 (Mo.App. 1979).

 On direct examination Arthur Schneider, the Commission's expert, testified that Kimco's damages were properly determined by multiplying four dollars a square foot times the number of square feet actually taken. He attributed no damage to the shopping center as a result of the loss of access on Lindbergh. He contended the Lindbergh access added no appreciable value to the shopping center.

In cross-examination Kimco attempted to show the witness took an inconsistent position in another pending condemnation case in which he was retained by the property owner. Schneider acknowledged that he had testified as an expert witness "with respect to a shopping center that's lost access[.]" The petition in the other case sought compensation because "[the condemnation] ... has specifically and uniquely injured the plaintiff in that it has obstructed access and visibility to plaintiff's land causing plaintiff's property to be less value [sic] as an existing leased shopping center." Schneider further acknowledged that he had given a deposition in the other case wherein he testified that he was "presently appraising the shopping center in the

**490**

southwest quadrant of Highway 40 and 141" for the purpose of determining damages in a case where "its a question of access." The following questions by Kimco and answers by Schneider were given:

Q They didn't take anything from that property and it's a question of, but they fouled the access up so bad—I shouldn't say that here in front of—they fouled the access up so bad the center has been reduced drastically in value?

A Right, sir.

Q Do you remember giving that answer?

A Yes, sir.

Q So at the time in July you told me that fouling the access up reduced that center, you had already concluded drastically in value?

A It could, yes, sir.

Q That shopping center still had access, didn't it?

A Yes, sir.

We find no error in permitting the cross-examination on a prior inconsistent statement on the issue of the witness' opinion of damages. The cross-examination was well within the broad discretion of the trial court to control cross-examination. Point denied.

SMITH, P.J., and AHRENS, J., concur.