STATE of Missouri, ex rel. MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Plaintiff/Appellant,

v.

Alan WALLACH, et al., Exceptions of Alan Wallach, et al., Defendants/Respondents.

No. 61462.

Missouri Court of Appeals, Eastern District, Division Three.

Jan. 26, 1993.

Paul R. Sterrett, Sr. Asst. Counsel, Missouri Highway and Transp. Com'n, St. Louis, for plaintiff/appellant.

J.B. Carter, Kirkwood, for defendants/respondents.

SMITH, Judge.

The Highway Commission appeals from the jury verdict and resultant judgment of $100,000 against it in this condemnation action. We reverse and remand.

The property in question is on the south side of St. Charles Rock Road at the intersection with Lucas and Hunt Road in St. Louis County. The Commission was improving the Rock Road and took less than one-tenth of an acre of the landowners' property fronting the road. The remainder of the parcel is approximately 4.8 acres. The land is utilized by the landowners for a scrap collection and recycling operation. This activity consists of receiving scrap, ferrous and non-ferrous, on the property and preparing it for resale mostly to smelters for recycling. The recycling is not done on the premises. The improvements by the Highway Commission have reduced the access to the property which previously included virtually the entire length of the property fronting the Rock Road. Landowners still have several points of access to the property. Curbing and change of grade are responsible for some of the reduction of access.

Substantial evidence was adduced that the property is paved with cobblestones over a large area. There was testimony that cobblestones are particularly valuable as a surface for the type of business conducted by landowners because of their durability and composition. There was substantial evidence that locations for the type of operation conducted on the property were rare or nonexistent in St. Louis County and the Metropolitan area because of zoning restrictions or because of lack of suitability for the purpose. Landowners' expert and one of the landowners testified that the highest and best use of the property was for the purpose presently being utilized by the landowners. The Commission's expert testified the highest and best use was for industrial which would include the use presently being made of the property. No one testified that the land was unsuitable for any use other than that currently utilized.

Over objection landowners produced extensive evidence of the effect upon their business operation of the highway improvement and the taking of the land. This included testimony of the effect of the reduction of access and the effect of the curbing on the movement of vehicles on the premises. Landowners, again over objection, elicited considerable and repetitive testimony of the effect of the reduction in area upon the operation of their business. Landowners did not attempt to utilize this evidence to establish an amount of business loss of profits but claimed the evidence was offered to establish the "highest and best use" for the property. The Commission in addition to objecting to the testimony offered four withdrawal instructions advising the jury it was not to consider respectively circuity of travel, inconvenience of travel, reduction of ability to turn into the property because of the curbing, and the loss of business by the landowners in arriving at the determination of damages. The trial court refused each of the four instructions.

On appeal the Commission premises error on the trial court's allowing evidence of the diversion of traffic, circuity and inconvenience of travel and placement of concrete islands on the basis that all of these factors are not compensable in condemnation cases. It premises error also on the trial court's admission of evidence regarding loss of customers and business "because such evidence is inadmissible due to its speculative and conjectural nature, and the business with its potential profits has not been taken by the condemnation ac-

tion." As a separate claim the Commission also premises error on the refusal of the trial court to give the requested withdrawal instructions. Additional points on appeal challenge the utilization of the income approach to evaluating the property, the qualifications of landowners expert, and one other evidentiary ruling.

■ On its point dealing with the difficulties or inconvenience in travel, the Commission relies on *State ex rel. State Highway Commission v. Meier*, 388 S.W.2d 855 (Mo. banc 1965) and *State ex rel. State Highway Commission v. Brockfeld*, 388 S.W.2d 862 (Mo. banc 1965). Both of those cases involved land adjacent to limited access highways in which the landowners sought to introduce evidence of the decrease in value of their property from the diversion of traffic because of the limited access. In both cases the Supreme Court held that the evidence was not admissible and that damages could not be recovered for such diversion of traffic. Judge Finch dissented in both cases. Shortly after *Meier* and *Brockfeld* the Supreme Court decided *State ex rel. State Highway Commission v. Galeener*, 402 S.W.2d 336 (Mo. 1966). There the court, while restating that noise and speed and similar inconveniences are not elements of damage sustained by a landowner for which he may be compensated, did hold that such inconveniences may with other factors affect future use and therefore market value. [5–7]. In *State ex rel. State Highway Commission v. Nickerson*, 578 S.W.2d 916 (Mo. banc 1979) then Senior Judge Finch in writing for the court distinguished *Meier* and *Brockfeld* on the basis that they held only that diversion of traffic is not a special item of damage which the landowner may show and for which damages are to be awarded. l.c. 919. The court held in *Nickerson* that in a partial taking the landowner is entitled to receive as compensation the difference between the fair market value of the entire tract immediately before the date of the taking and the fair market value of the property remaining immediately after the taking. l.c. 917. To the extent that traffic or other factors influence that fair market value they may be considered by the expert witnesses in arriving at their determination of fair market value after the taking, and by the jury in determining damages. That approach has been followed. *See, State ex rel. Missouri Highway and Transportation Commission v. Horine*, 776 S.W.2d 6 (Mo. banc 1989) [9–12]; *State ex rel. Missouri Highway and Transportation Commission v. Mosley*, 697 S.W.2d 247 (Mo.App.1985) [2, 3]; *State ex rel. Missouri Highway and Transportation Commission v. Jim Lynch Toyota, Inc.*, 830 S.W.2d 481 (Mo.App.1992) [3, 4]. It would appear logical that where such factors as change of traffic, noise, or similar items have changed the value of property by making it less usable or unusable for its highest and best use that those factors should be considered in determining the extent of the landowner's damages. The jury in a partial taking case is entitled to hear evidence of matters which determine the marketability of the remaining property including loss of some access, circuity of travel and inconvenience in utilizing access to the property. If those items cause a lowering of value of the remaining property they may be and should be taken into account by the valuation experts and the jury. One difficulty here is that much of this evidence of loss of access, circuity of travel, and so forth was based upon the impact those items had on the conduct of landowners' business not on the impact they had on the market value of the land. The connection to impact on market value was not established or even attempted. In view of our remand on the business loss issue we need not determine whether the evidence concerning loss of access, circuity of travel and so forth was erroneously admitted but on retrial the court can restrict such evidence to its impact on the market value of the remaining property.

■ We turn to the issue of business losses. Landowners denied that they put on evidence of business losses and the court found that they had not put on such evidence but had merely shown business "interferences". Most of the landowners' case dealt with the inconveniences which the business and its customers had sus-

tained as a result of the changes made by the Commission. We are unable to perceive what that evidence established other than that landowners' business had suffered as a result of the taking. The evidence was not relevant. Landowners' evidence did establish that no actual customers were lost. The evidence did not, directly or by implication, establish that the fair market value of the land was decreased because of these inconveniences in doing business, that the highest and best use of the land was impacted, or that purchasers were less likely to be interested in purchasing the property because of the inconveniences to the way landowners conducted *their* business. The evidence indicates that the landowners did in fact change the operation of their business to accommodate the inconveniences. Landowners assert before us that the evidence is relevant to establish highest and best use. Why this is so, is not explained and is not readily perceived.

It is the general rule that business profits are ordinarily not admissible evidence of the value of the land on which the business is located. *City of St. Louis v. Union Quarry & Construction Company,* 394 S.W.2d 300 (Mo.1965) [12]. The reason generally given is that evidence of profits derived from a business conducted on property is too speculative, uncertain, and remote to be considered as a basis for computing or ascertaining the market value. *Id.* An exception exists in total taking cases where the business is inextricably related to and connected with the land so that an appropriation of the land means an appropriation of the business. That exception does not apply here because this is a partial taking and because the land while suited for the purpose for which it is used is not limited to that use, or to the method of use utilized by the landowners. The general rule applies.

While it is true that the landowners did not attempt to prove business profits they did parade before the jury throughout the trial the business inconveniences suffered by them and the implication that this was something for which they should be compensated. Typical of this emphasis was the cross-examination questioning of the Commission's expert:

Q. You are aware that the law says you can't claim damages because of loss of business?

A. Yes, sir.

Q. But do you have any question in your mind as to whether or not his business has been damaged also.

(Objection overruled.)

The testimony elicited throughout the trial concerning the impact of the taking on the landowners' business rather than on the value of the land could not have done anything other than cause the jury to believe that business inconvenience was to be taken into account in determining the landowners' damages, else why was it the subject of so much testimony? The objections to this testimony should have been sustained. The court having allowed the testimony should have given the proposed withdrawal instruction. The award made was substantially above the amount of damage testified to by the Commission's expert so we cannot say as a matter of law that the jury did not consider the testimony in determining the amount of the damages.

We need not address the other issues raised here. We would point out to counsel for landowners that an income approach to valuation is not authorized in partial taking cases and that the expert should not testify that method was utilized by him, along with a proper method, in determining the pre-taking value.

The judgment is reversed and the cause remanded for new trial.

KAROHL, C.J., concurs.

GARY M. GAERTNER, P.J., dissents in separate dissenting opinion.

GARY M. GAERTNER, Presiding Judge, dissenting.

I respectfully dissent. After reviewing the record, I am convinced that, if any error occurred due to the trial court's refusal to give the requested withdrawal instructions, it was harmless error. I am of the further opinion that remanding this

case is ill-advised and goes against the principles of judicial economy.

At trial, respondent adduced evidence of circuity of travel, loss of access, reduction of area, inconvenience, etc. It is undisputed that the evidence complained of was properly admitted as evidence affecting the fair market value and highest and best use of the condemned property. *State ex rel. State Highway Commission v. Galeener,* 402 S.W.2d 336, 340 (Mo.1966); *State ex rel. State Highway Commission v. Nickerson,* 578 S.W.2d 916, 919 (Mo. banc 1979). The majority objects, not to the admission of the above evidence, but to the manner of its admission. The majority opinion states that the testimony "was based upon the impact those items had on the conduct of landowners' business not on the impact they had on the market value of the land." I cannot agree with this determination. In the record, respondents state quite often that they are not seeking compensation for business losses. Rather, they are merely trying to show that the State, through the Highway Commission, interfered with the property's highest and best use. This argument is perfectly proper. *Id.*

Furthermore, even if the majority is correct and the questioned evidence did have an "improper impact," the evidence is still admissible because it can be admitted for two other reasons; its effect on the property's fair market value, and its effect on the property's highest and best use. This court's latest pronouncement on the instant issues, *State ex rel. Hwy. Com'n v. Lynch Toyota,* 830 S.W.2d 481 (Mo.App., E.D. 1992), dealt with withdrawal instructions on issues of general benefits and detriments. This court held that the court's refusal to give the requested withdrawal instructions was error. *Id.* at 489. However, because it did not prevent the State from arguing its position during closing argument, the error was harmless. *Id.*

Strikingly similar conditions exist in the case before us. The Commission requested, and the court refused, the withdrawal instruction. This action was error. However, nothing prevented the Commission from arguing its point to the jury; in fact,

an examination of the record reveals that counsel for appellant did make this very argument during his closing. Moreover, counsel for appellant interposed numerous objections to evidence concerning so-called "business losses." Each time an objection was lodged, either opposing counsel or the court stated that the evidence was admissible to show either diminution of value or restriction of the property's highest and best use. Both are proper grounds for admission of the testimony. *State ex rel. Mo. Hwy. & Transportation Com'n v. Horine,* 776 S.W.2d 6, 12 (Mo. banc 1989); *Lynch Toyota,* 830 S.W.2d at 485. The jury heard each of these objections as well as the responses. The proper grounds for admission of the testimony must have been completely obvious.

Furthermore, in response to one of the above objections during closing argument, the following exchange occurred:

THE COURT (To the jury): Any inference that you should make any award on the grounds of loss of business you should not do that.

MR CARTER (Respondent's counsel): That's correct.

A withdrawal instruction, if one had been given, could not have made the jury's duty any more obvious than the above admonition by the court and the ensuing agreement by respondent's counsel.

In the interest of judicial economy, I feel the trial court's judgment should be upheld. On remand, all evidence in the instant record will be properly admissible, as will all other facets of the record. The only difference on remand will be the utilization of a short instruction given after both sides rest. I see no sense in requiring this, especially when the trial judge gave the virtual equivalent of the instruction in the form of an admonition to the jury during closing argument. Any error, I feel, is certainly harmless, and I would affirm the judgment of the trial court.