STATE of Missouri, ex rel. MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Plaintiffs–Respondents,

v.

McDONALD'S CORP., et al., Exceptions of Clarkson Clayton Center Associates, et al., Defendants–Appellants.

No. 63234.

Missouri Court of Appeals, Eastern District, Division Three.

Feb. 15, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 15, 1994.

Robert Denlow and Associates, Robert Denlow and Paul G. Henry, Clayton, for defendants-appellants.

Lynn Ann Whaley, Paul R. Ferber and Rich Tiemeyer, Chesterfield, for plaintiffs-respondents.

KAROHL, Judge.

Defendant landowners, Clarkson Clayton Center Associates, appeal from judgment on a jury verdict awarding them a total of $33,-000 in condemnation damages. They raise three points on appeal. First, the trial court erred in admitting testimony of the Missouri Highway & Transportation Commission's (Commission) expert because he valued the taken property alone rather than as a part of the larger tract from which it was taken. Second, the trial court erred in allowing the Commission's expert to testify because he did not use one of the accepted methods of appraisal. Third, the trial court erred in prohibiting one of the landowners, Norbert Sandbothe, from testifying as to valuation based on comparable sales because he was not disclosed as an expert witness. We reverse and remand.

This appeal results from the condemnation of land to be used to widen Clarkson Road in St. Louis County. The parcel of property which was taken runs along Clarkson Road and includes common ground, on which grass and trees were planted to surround a shopping center, and also includes some paved areas. It was part of a commercial shopping center known as Clarkson Clayton Center. This shopping center includes a grocery store, drug store, restaurant, office building and numerous other tenants.

Clarkson Clayton Center Associates, a partnership, developed and owns the center. Some buildings in the center are owned by Clarkson Clayton Center Associates and are leased to tenants, some tenants own their improvements on the property and pay Clarkson Clayton Center Associates according to ground leases. The principal partners of Clarkson Clayton Center Associates are Norbert Sandbothe and Eugene Keeven.

The taking involved two parcels of property; one on lot five (parcel 51) of the center and one on lot three (parcel 54). Lot five consists of the Dierbergs Center, an L-shaped building on which Dierbergs grocery store is the anchor tenant and other businesses rent space. The common ground is also located on lot five. The taking on lot five included 16,523 square feet for a permanent easement, and smaller portions of ground for a temporary construction easement, a drainage easement and a sidewalk easement. Lot three consists of an office building. The taking on this lot included a temporary construction easement and a sidewalk easement.

The Commission filed its condemnation petition April 1, 1991. The petition included areas in both parcels noted above; however, the taking predominantly occurred in lot five. The property owners rejected the state's offer of $45,290. The court-appointed Commissioners filed their report August 14, 1991 and assessed damages at $149,000 for lot five and $9,500 for lot three. Exceptions were filed by both parties. A separate cause number was assigned to exceptions for each parcel. The cases were consolidated and tried together.

During trial, landowners called only two witnesses; Norbert Sandbothe, one of the owners of the property, and Eugene Jefferson, an appraisal expert. The Commission presented the expert testimony of Donald Roach. The jury awarded $30,000 for lot five and $3,000 for lot three. It is from this jury award that landowners now appeal. The appeal involves testimony of two experts on substantive issues and exclusion of expert testimony of a party as a sanction issue.

A trial court has broad discretion regarding whether or not to admit evidence, including expert testimony. *Delaporte v. Robey Bldg. Supply, Inc.*, 812 S.W.2d 526, 531 (Mo. App.1991). Additionally, trial errors in the admission or in the exclusion of evidence, particularly in condemnation cases, will not normally result in our reversing a decision without a showing of "substantial or glaring injustice." *State ex rel. Missouri Hwy. & Tr. Comm'n v. Kuhlmann*, 830 S.W.2d 569, 571 (Mo.App.E.D.1992).

Landowners' first claim of error states the trial court should not have allowed the Commission's expert witness to value the taken piece of property independently from the larger tract. Landowners argue this was error because the tripartite rule of unity dictates the taken piece should have been valued as a part of the entire piece of property from which it was taken. This rule states that in eminent domain cases, damages will be assessed against the whole property and not the individual taken piece of property if the parcels of land are touching or physically connected, with both unity of ownership and unity of use. *State ex rel. Missouri Hwy. & Tr. Comm'n v. Starling Plaza Partnership*, 832 S.W.2d 518, 521 (Mo. banc 1992). The rationale for this rule is to assure property owners will be made whole when a partial taking occurs because the value of the smaller taken piece of property will often be dependent upon the larger piece.

The common ground which was taken physically adjoins the rest of the center's property. It provided the center an area with grass and trees which surrounded the whole parcel and also visually separated the center from the roadway. The entire center, including the taken common ground, was developed as a planned unit for commercial purposes. Sandbothe and Keeven, the partners of Clarkson Clayton Center Associates, own the common ground which was taken.

In its brief, the Commission argues that the tripartite rule of unity does not apply, because landowners did not maintain this position at trial nor present evidence during their case in chief on this proposition. We find the issue was preserved. Landowners objected more than once to the Commission's expert valuing the taken piece separately. Each objection was based on the rule that the property should be valued as a part of the whole parcel. Landowners, therefore, adequately preserved this issue for appeal.

■ The Commission further argues that the tripartite rule of unity issue is moot because its expert did give a value as to the whole piece of property both before and after the taking. In the case of a partial taking, just compensation is determined by assessing the difference in the property's fair market value immediately before and immediately after the taking. *State ex rel. State Hwy. Comm'n. v. Kendrick*, 383 S.W.2d 740, 745 (Mo.1964). Another method by which to reach an appropriate value for damages is to include the market value of the taken land plus consequential damages, if applicable, assessed to the remaining parcel to which the taken property originally belonged. *Id.* The supreme court in *Kendrick*, 383 S.W.2d at 744 said:

> Property taken for public use is to be valued at its highest and best use. Where the part taken from a larger tract of land is of greater value as a part of the whole tract than as a separate parcel, the part taken "must be valued as a portion of the tract of which it is a part and not as if it stood alone." (Quoting Nichols on Eminent Domain, 3rd Ed., Vol. 4, Sec. 14.231, pp. 544–545.)

■ While the Commission's expert claimed to have valued the whole property before and after the taking, we find his testimony (that the parcel taken was of zero value) not probative of value before and after the taking. He testified the surviving parcel had the same value before and after the

taking. Additionally, he gave no true after value for the property but simply deduced that since he believed rents would not be affected, no value was lost. The testimony was not in proper form and should have been excluded.

Landowners' second point on appeal is the trial court also erred in admitting, over objection, expert testimony of the Commission's expert because he did not utilize one of the accepted and required methods of appraisal. The three accepted methods by which to value condemned property are: (1) the comparable or direct sales/market approach, (2) the cost approach, and, (3) the income approach. *State ex rel. State Hwy. Comm'n v. Southern Dev. Co.*, 509 S.W.2d 18, 27 (Mo. 1974); *Del–Mar Redevelopment Corp. v. Associated Garages, Inc.*, 726 S.W.2d 866, 869 (Mo.App.1987).

 The comparable sales approach consists of comparing voluntary sales of similar properties from the same general location which occurred close in time to when the subject property was taken. *Del–Mar Redevelopment Corp. v. Associated Garages, Inc.*, 726 S.W.2d at 869. The cost approach considers the cost which would be required to replace an existing structure and is often used to value improved property. *State ex rel. State Hwy. Comm'n v. Southern Dev. Co.*, 509 S.W.2d at 27. The cost approach is not an appropriate valuation method for unimproved property. *Id.* Finally, for a total taking of income-producing property, the income approach can be an appropriate valuation method. *Id.* The income approach is not a proper method to use in the case of a partial taking, such as the taking at issue in this case. *State ex rel. State Hwy. Comm'n v. Mann*, 624 S.W.2d 4, 10 (Mo. banc 1981).

It is also unclear which method or methods were used by the Commission's expert. At one point, he denied using any of the three approved valuation techniques. He attempted to utilize the comparable sales approach but could find no similar properties with which to compare the taken property, therefore, he valued it at zero. Proper use of this method of valuing property requires it be compared with other similar parcels from the same general area sold in a relatively similar time frame to that of the taking. *State ex rel. State Hwy. Comm'n v. Southern Dev. Co.*, 509 S.W.2d at 27.

The Commission's expert found no similar properties with which to compare the taken property because of the criteria he used in declaring properties to be similar. The Commission argues in its brief, its expert needed to find similar properties "rendered undevelopable by zoning regulations and size" which were basically "unusable ground." The Commission also argues that the taken property was actually a "cost liability" to its owners. This is essentially an argument the Commission is entitled to take land by condemnation without paying more than nominal compensation.

Additionally, the Commission's expert made reference to the income approach to find a value of the entire property before and after the taking. This was not an available method. He decided the value of the entire center remained the same after the taking, saying, "I didn't have specific rental information, I looked at it through the eyes of a purchaser." He concluded that the loss of the taken property would not impact the revenue generated from the rental income. The expert testified, "The trees aren't going to generate one plug nickel of additional rent." He added that if he were going to buy an office building, he would not care how many trees and how much grass were around the center. He simply deduced that since he believed rents would not be affected by the taking, no value was lost. However, he presented no data to support how he arrived at this conclusion.

 The Commission agrees that its expert did not adequately perform a before and after valuation by an acknowledgment in its brief that its expert testified "*if he had* calculated full before and after valuations on each lot of the entire center, he would find that there had been no change in the market value." (emphasis added) On both claims of error, landowners are entitled to relief. The Commission's expert was permitted, over objection, to offer improper expert evidence and this evidence on the only appeal issue,

valuation, cannot be found unprejudicial. A new trial is required.

For the third point on appeal, landowners contend the trial court erred when it prevented Sandbothe, an owner, from testifying as an expert regarding valuation based on comparable sales. The Commission counterargues that if we decide the court erred in prohibiting this testimony, landowners did not properly preserve the issue because an insufficient offer of proof was given. Additionally, it argues the exclusion of this testimony did not prejudice landowners because it would have merely amounted to cumulative evidence since similar information was offered through another expert's testimony.

■ While property owners may always testify as to their opinion concerning the value of their own property, they may not support that opinion by reference to comparable sales unless they qualify as an expert. *State ex rel. Missouri Hwy. and Tr. Comm'n v. Pracht*, 801 S.W.2d 90, 94 (Mo.App.1990). The court sustained the Commission's objection to Sandbothe's expert testimony on the ground that he had not been listed as an expert in landowners' answer to the Commission's interrogatories. The basis of the objection and the ruling concede Sandbothe was an expert. The exclusion was as a sanction, not for lack of qualification. Hence, the court excluded testimony of an expert on valuation.

■ Rule 56.01(b)(4) of the Missouri Rules of Civil Procedure requires disclosure of expert witnesses who are expected to be called and testify at trial. An expert witness is someone *retained by a party in anticipation of litigation* for the purpose of testifying at trial. Because of the expert's superior knowledge concerning a given subject, his or her testimony should aid the jury regarding matters on which people with average knowledge may have difficulty forming accurate opinions. *St. Louis County v. Pennington*, 827 S.W.2d 265, 266 (Mo.App.E.D.1992). Sandbothe, a party and not a person retained by a party to this action, may have possessed expert knowledge which could have helped the jury.

We find Rule 56.01(b)(4) does not apply to parties and hold application of the sanction was error. This rule applies only to experts retained by parties in anticipation of litigation. *Ginnever v. Scroggins*, 867 S.W.2d 597 (Mo.App.E.D.1993). Exclusion of testimony of a party who is an expert is wholly unauthorized by the plain language of the rule. The purpose of this and other discovery rules is to eliminate the element of surprise during trial and provide the parties with all relevant materials. *State ex rel. Plank v. Koehr*, 831 S.W.2d 926, 927 (Mo. banc 1992). No surprise would have resulted here if the Commission had availed itself of the opportunity to learn Sandbothe's expert qualifications through the pre-trial discovery process for it knew a party was likely to give testimony. The court's ruling excluded an entire category of evidence as a sanction for an alleged violation of discovery rules.

■ The admission or exclusion of evidence of comparable sales rests within the trial court's discretion, and the court's decision will be affirmed absent manifest abuse. It is therefore, reviewable as a matter of abuse of discretion. *State ex rel. Mo. Hwy. & Tr. Comm'n v. Roth*, 687 S.W.2d 662, 666 (Mo.App.1985). A trial court is vested with considerable discretion in deciding whether or not it should exclude evidence. Only if a court abuses this discretion will its ruling be grounds for reversal. *Kelly by Kelly v. Jackson*, 798 S.W.2d 699, 704 (Mo. banc 1990). A trial court abuses its discretion when the court's ruling is clearly against the logic of the circumstances then before the court, and when it is so arbitrary and unreasonable that it shocks one's sense of justice and indicates a lack of careful consideration. *Anglim v. Missouri. Pacific R.R. Co.*, 832 S.W.2d 298, 303 (Mo. banc 1992), *cert. denied,* — U.S. ——, 113 S.Ct. 831, 121 L.Ed.2d 701; *State ex rel. Mo. Hwy. & Tr. Comm'n v. Roth*, 687 S.W.2d at 666. If reasonable persons could differ in their opinions as to the propriety of the trial court's action, there has been no abuse of discretion. *Id.* This trial court did not, however, have discretion to misapply the rule. This constitutes a misapplication of the law.

The Commission also argues landowners did not present an adequate offer of proof by which to preserve the issue for appellate review. An offer of proof is required when evidence is excluded on evidentiary grounds. The Commission's objection was not directed at the content or quality of Sandbothe's testimony. Its objection essentially argued that relevant evidence must be excluded as a sanction. The court agreed. In such cases an offer of proof is meaningless. The complete exclusion of what may have been probative evidence without consideration of whether it would be admissible, removes the need for an offer of proof to fully inform the trial court on matters of admissibility. Offers of proof are irrelevant when refusing testimony as a sanction.

Moreover, even if an offer of proof were required, landowners sufficiently informed the court of the proposed evidence. We agree with the Commission's contention that the preferred method by which to give an offer of proof is the question and answer format, wherein an attorney asks a witness questions before the judge, away from the jury, and on the record. *School Dist. of City of Independence, Mo., No. 30 v. U.S. Gypsum Co.*, 750 S.W.2d 442, 453 (Mo.App.1988).

Landowners' offer of proof consisted of a narrative, which can suffice, as an exception to the standard rule if it is sufficiently specific. *Id.* Landowners' offer of proof at trial fits within the boundaries of this narrow exception. *Frank v. Environmental Sanitation Mgmt. Inc.*, 687 S.W.2d 876, 883 (Mo. banc 1985); *State ex rel. State Hwy. Comm'n v. Northeast Bldg. Co.*, 421 S.W.2d 297 (Mo.1967). The exception proclaims traditional offers of proof are not necessary when three components are met. First, based on the record, a complete understanding of the excluded testimony must exist. Second, the evidence objected to must be a category of evidence and not specific testimony. Third, the record must support a finding that the evidence, if allowed, would have helped the party who wanted to present it. *Frank v. Environmental Sanitation Mgmt.*, 687 S.W.2d at 883–84. If these three components exist, a standard offer of proof is not necessary to acquaint the trial court with

a full factual setting for ruling on evidentiary objections, nor is it necessary for adequate appellate review.

The Commission further argues that landowners suffered no prejudice by the trial court's ruling excluding Sandbothe's testimony regarding comparable sales because he was able to get the information into his testimony anyway. The testimony to which the Commission refers follows:

Q: And do you know whether these properties sold for a range similar to yours?

Ms. Whaley: Objection, your Honor. This is going into hearsay.

The Court: Sustained.

Q: Were these values consistent with the value opinion that you are giving here today?

A: [Sandbothe] Yes.

Ms. Whaley: Objection, your Honor. Hearsay.

The Court: The objection is sustained.

The objections were sustained, and Sandbothe was not allowed to explain his reasoning or to give the basis of his answer which consisted of one word, "Yes." The jury may not have heard all his qualifications to give such an expert opinion and were denied a complete statement of facts supporting his opinion. Even the partial testimony was blemished by the court sustaining the objection.

Finally, the Commission argues landowners suffered no prejudice by the exclusion of Sandbothe's testimony regarding comparable sales because landowners were still able to present evidence of comparable sales to the jury through another expert. We disagree.

This court has found no "substantial or glaring injustice" in rejecting similar comparable sales evidence proposed by other landowners when those landowners presented the same evidence through expert testimony. *State ex rel. Hwy. & Tr. Com'n v. Pracht*, 801 S.W.2d at 94. However, in *Pracht*, no indication existed that those landowners may indeed be qualified to give such testimony. We have also held the testimony of one expert in a condemnation case may be properly excluded as merely cumulative only when

another expert was able to testify, and the excluded expert's testimony would have been based on an improper valuation technique. *State ex rel. Hwy. & Tr. Comm'n v. Kuhlmann,* 830 S.W.2d at 571. There is no such indication here, and the contrary may be inferred by the request for sanction exclusion.

If a decision turns on the weight of the evidence, "evidence should not be rejected as cumulative when it goes to the very root of the matter in controversy or relates to the main issue." *Kummer v. Cruz,* 752 S.W.2d 801, 808 (Mo.App.1988). Here, Sandbothe's excluded testimony did in fact go to the heart of the controversy, the value of the taken property.

The exclusion of relevant and admissible expert testimony is not always reversible error. *Huelster v. St. Anthony's Medical Center,* 755 S.W.2d 16, 17 (Mo.App.1988). Here, however, the testimony was not just of an expert, it was also the testimony of a party. A party's right to fully tell his or her story to the jury is a fundamental right, absent a sufficient evidentiary rule to preclude part of the testimony.

We reverse and remand for a new trial.

SIMON, P.J., and PUDLOWSKI, J., concur.