STATE of Missouri, ex rel., MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Appellant,

v.

Norma ROBERTS, et al., Exceptions of Charles E. Rutt, et al., Respondent.

No. WD 51290.

Missouri Court of Appeals, Western District.

April 9, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 28, 1996.

Application to Transfer Denied Aug. 20, 1996.

Mary Ellen Weeman, Assistant Counsel, Judy L. Curren, District Counsel, Rich Tiemeyer, Chief Counsel, Mo. Highway & Transp. Comm'n, Kansas City, for appellant.

Robert W. Spangler, Harrisonville, for respondent.

Before ULRICH, P.J., and BRECKENRIDGE and EDWIN H. SMITH, JJ.

ULRICH, Presiding Judge.

The Missouri Highway and Transportation Commission (MHTC) appeals the judgment of the trial court after a jury trial awarding Charles and Marolyn Rutt $50,000 in damages for condemnation of their real property. The judgment of the trial court is affirmed.

On December 12, 1991, MHTC filed a petition seeking to condemn 3.13 acres of a 28.81 acre tract of land in Cass County, Missouri, to widen Highway 7 from two lanes to four lanes with a divided 60 foot median. The 3.13 acre tract, owned by the Rutts, was condemned by order of the trial court on January 24, 1992.

Prior to acquisition, the Rutts' property had approximately 900 feet of frontage along Highway 7 to the north and 1,100 feet of frontage to Chandler Road to the west. It was improved with a barbecue restaurant, a gravel "on grade" drive onto Chandler Road, a parking lot, a pond, and a lagoon. The improvements were located generally in the northwest corner of the property with the restaurant building situated 200 feet south of Highway 7 and 250 feet east of Chandler Road. The remainder of the tract was agricultural.

The acreage acquired by MHTC consisted of a 127 foot wide strip of land adjacent to the Highway 7 frontage. Additionally, a .11 acre temporary construction easement was acquired for drainage and reconstruction of the entrance from the property onto Chandler Road. As a result of the taking and construction of the new highway, the driveway entrance from Chandler Road onto the Rutts' property was elevated to a nine percent grade.

On February 4, 1992, appointed commissioners filed a report assessing damages to the Rutts in the amount of $55,000. The Rutts and MHTC filed exceptions to the commissioners' report on February 10, 1992, and February 11, 1992, respectively. MHTC paid the amount of the commissioners' award into the court on February 27, 1992. On April 6, 1995, the jury returned its verdict for the Rutts in the amount of $50,000. This appeal followed.

**I. Relevancy of Evidence Regarding the Intersection of Chandler Road and Highway 7 and the Entrance onto the Rutts' property.**

In point one of its appeal, MHTC claims the trial court erred in admitting evidence regarding the inconvenient and hazardous condition of the intersection of Highway 7 and Chandler Road and the entrance into the Rutts' property from Chandler Road resulting from the elevated grade. It argues that the condition of the intersection and entrance was irrelevant and incompetent to the issue

of damages in the condemnation proceeding because it did not impact on the fair market value of the Rutts' property.

■ Where a partial taking is effected by condemnation, the appropriate measure of damages is the difference between the fair market value of the entire property before the taking and the fair market value after the taking. *State ex rel. Missouri Highway and Transp. Comm'n v. Horine*, 776 S.W.2d 6, 12 (Mo. banc 1989). Any factor which results in diminution of the fair market value of the remainder of the property is proper as an element of damages. *Id.; State ex rel. Missouri Highway and Transp. Comm'n v. Mosley*, 697 S.W.2d 247, 248 (Mo.App.1985).

Relying on *State ex rel. Missouri Highway and Transportation Commission v. Wallach*, 845 S.W.2d 703, 705 (Mo.App.1993), MHTC argues that the evidence of the unsafe condition of the intersection and driveway emphasized the taking's impact on the Rutts' restaurant business rather than the fair market value of their property and, therefore, was inadmissible in this condemnation proceeding. In *Wallach*, MHTC took less than one tenth of one acre of a landowner's property fronting a road for improvements to the road. *Id.* at 704. The improvements to the road including curbing and change of grade reduced the access to the property which previously included the entire length of the property fronting the road. *Id.* The landowners, who used the land for a scrap collection and recycling operation, produced extensive evidence at trial, over the objections of MHTC, regarding the effect the highway improvements and the taking of the land had upon their business. *Id.*

On appeal, MHTC argued that the trial court erred in admitting evidence of the diversion of traffic, circuity and inconvenience of travel, and placement of concrete islands because the factors were not compensable in a condemnation case. *Id.* Additionally, it alleged error in the trial court's admission of evidence regarding loss of customers and business. *Id.* The Eastern District explained that to the extent any factor influences the fair market value of the property remaining immediately after the taking, it may be considered by the expert witness in arriving at the valuation of the property after the taking and by the jury in determining damages. *Id.* at 705.

In reversing and remanding the case for a new trial, the Eastern District found that the testimony elicited throughout the trial concerned the impact of the taking on the landowners' business rather than the value of the land. *Id.* at 706. The court explained that evidence that the landowner's business had suffered as a result of the taking was not relevant nor admissible in the condemnation case. *Id.* at 706. Likewise, it concluded that evidence of loss of access, circuity of travel, and inconvenience in utilizing access to the property was inadmissible to the extent that it impacted on the conduct of the landowners' business. *Id.* at 705.

Unlike *Wallach*, evidence in this case established that the condition of the driveway impacted negatively on the fair market value of the Rutts' remaining property. Roy Obermiller, a professional engineer, testified at trial for the Rutts regarding the deficiency of the driveway after the taking. He testified that there was an inadequate distance along Chandler Road between the new driveway and the highway for vehicles to cue up, to stack, or to wait in order to make a turning move onto the highway. Thus, he claimed that vehicles wishing to enter the restaurant from the highway would likely find the driveway blocked and would impair traffic on the highway while waiting for the driveway and Chandler Road to clear. He further testified that traffic in and out of the driveway from Chandler Road into the remaining property was also impaired because of the short distance between the driveway and highway. Mr. Obermiller explained that vehicles pulling trailers would be unable to turn either into the driveway or onto Highway 7 without using both lanes of Chandler Road to make the turn.

Additionally, Mr. Obermiller testified that the driveway onto the Rutts' property would be hazardous to vehicles at night and in winter weather conditions because of the steep gradient. He stated that the lack of reflectors, warning devices, and guardrails would be dangerous to a driver who did not see the drop-off.

As a result of his evaluation of the driveway and intersection, Mr. Obermiller recommended that the driveway be relocated 200 feet south of the highway where the gradient would be only one and a half percent. He claimed that the vehicle stacking problems and the hazards caused from the steep grade would be eliminated. In Mr. Obermiller's estimation, the cost of relocating the driveway would be $22,820.

Janet Copeland, the Rutts' valuation expert, testified regarding damages. Using the cost less depreciation and comparable sales methods, she opined that the fair market value of the Rutts' property before the taking was $169,000 and $106,200 after the taking. She then allocated compensation due the Rutts at "just under $70,000" among the burdens of the taking including the cost of reconstructing the driveway. Ms. Copeland testified .that good access affects the value and marketability of commercial property and that the fair market value of the Rutts' property was diminished by the cost of relocating the driveway.

■ Although Mr. Obermiller's technical testimony of costs to relocate the inconvenient and dangerous driveway did not furnish evidence of an impact on the fair market value of the property, the opinion evidence of Ms. Copeland provided that the condition of the driveway directly related to diminution in market value. The hazardous condition caused by the intersection of Chandler Road and Highway 7 and the entrance into the Rutts' property from Chandler Road was properly considered by Ms. Copeland in valuing the property after the taking and by the jury in determining damages. This case, therefore, is distinguishable from *Wallach,* and the trial court did not err in admitting evidence of the unsafe condition of the intersection and driveway and its impact on the fair market value of the Rutts' property. Point one is denied.

## II. Janet Copeland's Testimony Regarding the Fair Market Value and Damages to the Rutts' Property

In its second point, MHTC argues that the trial court erroneously admitted the testimony of Janet Copeland regarding the fair market value and damages to the Rutts' property. It claims that Ms. Copeland utilized an improper method in valuing the Rutts' property before and after the taking.

■ In valuing condemned property, three methods of appraisal are accepted: (1) the income approach, (2) the cost approach, and (3) the comparable sales approach. *State ex rel. Missouri Highway and Transp. Comm'n v. McDonald's Corp.,* 872 S.W.2d 108, 112 (Mo.App.1994). The income approach attempts to determine market value by analyzing a property's capacity to produce income. 7 PHILIP NICHOLS, THE LAW OF EMINENT DOMAIN § 4.04[3][c] (3rd. ed. 1995). The income approach is only appropriate to value a total taking of income-producing property. *McDonald's,* 872 S.W.2d at 112.

■ The cost or cost less depreciation approach considers the cost to replace an existing structure and is often used to value improved property. *Id.* The cost approach involves a three step process.

> First, the land is valued as if vacant and thus available to be valued at its highest and best use. This is generally accomplished by using comparable sales data. Second, the reproduction or replacement cost of the structures or improvements are estimated. This is calculated by determining current prices of all materials, labor and necessary overhead. These costs are added to the land value, thus this approach is sometimes referred to as the summation method. Finally, accrued depreciation must be estimated and deducted from the · total amount. Accrued depreciation includes physical deterioration, functional obsolescence and external obsolescence.

5 NICHOLS, *supra,* § 20.03[3].

■ The comparable sales approach involves the comparison of the condemned property and voluntary sales of similar properties from the same general location. *McDonald's,* 872 S.W.2d at 112. The differences between the comparable properties and the condemned property are analyzed and adjustments are made to the comparables' sale prices to calculate the market value

**22**

of the subject property. 7 NICHOLS, *supra,* § 4.04[3][a].

MHTC contends that Ms. Copeland improperly utilized comparable sales by allocating the sale prices of the comparables between improvements and land to value the Rutts' property before and after the taking contrary to the rule established in *State ex rel. State Highway Commission v. Klipsch,* 392 S.W.2d 287 (Mo.1965). It argues that Ms. Copeland's valuation opinion was, therefore, based on speculation and conjecture and not supported by independent facts.

In *Klipsch,* the Missouri Supreme Court held that if a comparable sales figure is admitted into evidence, a witness may identify the similarities and differences between the comparable property and the condemned property to aid the jury in estimating the value of the condemned property. *Id.* at 291. The witness, however, may not testify as to his opinion of the value of comparable land, nor may he testify regarding the allocation of the comparable's sale price among the comparable's distinguishing features, such as an improvement. *Id.* at 290–92.

▮ *Klipsch,* however, is inapplicable in this case. Ms. Copeland utilized the cost approach to value the Rutts' property before and after the taking. She testified that she first valued the commercial portion of the land as if vacant by using the comparable sales approach to compare other vacant commercial land. Explaining that the restaurant business was the highest and best use of the Rutts' commercial land, Ms. Copeland compared the Rutts' property before and after the taking with the two tracts of vacant land zoned for commercial use recently sold in the area.[1] Ms. Copeland did not express her opinion concerning the sale prices of the comparables, and the vacant comparables did not contain improvements. She valued the remainder of the Rutts' land with comparable agricultural property. Next, Ms. Copeland estimated the replacement cost of the im-

provements on the land and deducted the estimated depreciation. The remaining figure was added to the land value figure to determine the value of the Rutts' property before and after the taking. Ms. Copeland's valuation based on the cost approach was proper, and the trial court did not err in admitting her testimony. Point two is denied.

The judgment of the trial court is affirmed.

All concur.

---

1. Ms. Copeland also compared the Rutts' property with two other improved properties. However, the record of Ms. Copeland's testimony, both during direct and cross-examinations, discloses that she relied mainly on the vacant land to arrive at a land valuation.

Additionally, any allocation of the comparables' sale prices was elicited by MHTC on cross-examination of Ms. Copeland and objected to by counsel for the Rutts.