Justin F. RIGALI, Archbishop
of the Archdiocese of St.
Louis, Appellant,

v.

KENSINGTON PLACE HOME-
OWNERS' ASSOCIATION, (Lot A), et
al., Respondents.

No. ED 81417.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 8, 2003.

William J. Travis, Greensfelder, Hemker & Gale, P.C., St. Louis, MO, for appellant.

Donald S. Singer, Edwards, Singer, Watkins & Spoeneman, L.L.P., Clayton, MO, for respondents.

PAUL J. SIMON, Presiding Judge.

Justin F. Rigali, Archbishop of the Archdiocese of St. Louis, (plaintiff) appeals from the judgment of the trial court awarding Kensington Place Homeowners' Association, its trustees and all lot owners within Kensington Place subdivision, numbering more than one hundred individuals (defendants) damages in the amount of $300,000 in an action for the establishment of a way of necessity.

On appeal, plaintiff contends the trial court erred in: (1) refusing to strike the expert opinion of Ernest Demba, a licensed general real estate appraiser, as to the amount of defendants' alleged damages and in refusing to grant plaintiff's request for remittitur because Demba's opinion was not based on facts or data of a type reasonably relied on by experts in the field in forming opinions or inferences on the subject and was not otherwise reasonably reliable or admissible under Section 490.065.3 RSMo 1994 (all further references hereinafter shall be to RSMo 1994 unless otherwise indicated) in that: (a) the comparable sales approach used by Demba in estimating condemnation damages required a comparison of the condemned property with voluntary sales of similar properties from the same general location, (b) Demba testified that he was using the comparable sales approach to calculate the property's fair market value, but he provided no evidence or testimony regarding any such comparable sales of similar properties and admitted on cross-examination that he found no such comparable sales during his research and preparation and (c) plaintiff's expert, Darrell Mueller, a licensed real estate broker, offered the only evidence concerning comparable sales of property, and those comparable sales involved sale prices of less than approximately $3 per square foot of property; (2) overruling plaintiff's objections to and admitting into evidence defendants' testimony concerning the diminution in value that defendants presumed the taking would cause to the surrounding neighborhood as a whole and to defendants' individual lots because such evidence was irrelevant and prejudicial in that the only correct measure of damages was the difference between the fair market value of the subject 2250–square–foot property before the taking and its fair market value after the taking; and (3) denying plaintiff's motion

to amend the judgment by reducing the amount of the judgment to 48% of the verdict because the judgment erroneously: (a) awards to all defendants, including those who did not file exceptions, damages based on the jury's verdict in that Section 228.358 requires non-excepting defendants' recovery to be limited to the amount of Commissioners' award, or in the alternative (b) gave a windfall to the owners of only 48% of the interests in the property in that: (i) it collectively was owned by all owners of lots in the Kensington Place subdivision as tenants in common, but only 48% of those owners filed exceptions, (ii) the verdict represents the full damages to the interests of all lot owners, including the 52% who did not file exceptions, and (iii) the excepting lot owners have no right to share in that portion of the judgment representing the interests of the non-excepting lot owners. Judgment reversed and remanded.

In a light most favorable to the jury's verdict, the record reveals the following: Plaintiff filed its petition for establishment of a way of necessity alleging: (1) it owns a fee simple interest in a tract of land, located in the City of O'Fallon, St. Charles County on the East side of Highway K and on the South side of Christina Marie Drive, a public street; (2) defendants are the owners in fee simple of the lots in Kensington Place subdivision, which is located adjacent to plaintiff's tract; (3) plaintiff's tract is bordered to the East by private property, namely Lot One of the Kensington Place subdivision, to the South by private property and a drainage area, to the West by Highway K for a length of approximately 245 feet, which does not have any curb cut or other access to Highway K, and to the North by a parcel of land owned in common by defendants measuring approximately 223 feet long and 10 feet wide, which is on the same side of the street as Christina Marie Drive; (4)

plaintiff's land is landlocked because it has no legally enforceable access to, from or along any public roadway; (5) plaintiff proposed a site plan to the City of O'Fallon in which it proposed access to its land from Highway K, however, the City Planning and Zoning Commission denied the proposal and concluded that access to plaintiff's land shall occur from Christina Marie Drive only; and (6) plaintiff made an offer to purchase from defendants a portion of defendants' 223 × 10 feet parcel of land measuring approximately 10 feet wide by 40 feet long (hereinafter referred to as "Parcel") for $10.00 per square foot, for a total of $4,000 to be used as an access to and from its land onto Christina Marie Drive, however, defendants did not accept. Plaintiff requested that the trial court grant 400 square feet by way of necessity across Parcel and appoint Commissioners to assess defendants' damages.

Seven answers were filed by seven different groups of defendants. The first answer filed by some defendants, including trustees of the Kensington Place Homeowners' Association, generally denied most allegations set forth in the petition. In the six remaining answers, defendants denied the allegations regarding damages and stated specifically, "By way of further answer, defendants state that they wish to sell [Parcel] at a fair market value and/or for fair compensation. It is the Kensington Place Trustees' intent, not the defendants', to try to fight the access on to Christina Marie."

Following a trial, the trial court entered its findings of fact and conclusions of law establishing a private road by way of strict necessity over defendants' land as described in the petition and later appointed Commissioners, who assessed defendants' damages at $12,000. Plaintiff filed exceptions to the Commissioners' report on March 30, 2001, and some of the defen-

dants filed their exceptions on April 2, 2001. Plaintiff and defendants filing exceptions requested a jury trial on the issue of damages. Plaintiff also filed a motion, which was granted, to deposit funds in lieu of bond seeking to deposit the full Commissioners' award of $12,000 into the registry of the court as security.

On April 29, 2000, a jury trial was held in which the following evidence was adduced: Defendants first called Steven Walker, homeowner in Kensington Place subdivision and trustee of the subdivision's Homeowners' Association. Walker testified that as a trustee he is responsible for the maintenance of the common ground in the subdivision, including Parcel, and for assessing values to ensure the payment "for all the upkeep of [that] land." He testified that the purpose of the Parcel is "to keep commercial [traffic] from coming through [the] subdivision." He stated that in his opinion he would value Parcel to be worth $300,000 and that but for the proceedings he would not willingly sell Parcel. He valued Parcel at "zero" after the incursion because it would no longer serve its purpose. He stated that he was told that an additional lane would be created if Plaintiff established a business on the land, which would affect the value of Parcel in that traffic would become worse by a widened road.

Defendants also called John Mehlen, homeowner in Kensington Place Subdivision, who testified that he believed the purpose of Parcel was "to buffer [defendants] from any development that could happen along Highway K," which influenced his decision on moving into his house in that he "knew commercial property couldn't be developed in that area. It would separate [defendants'] subdivision from any development." He testified that he believed the value of Parcel before the incursion was $300,000, however, upon Plaintiff's objection the trial court struck his answer. Defendants' counsel asked his opinion of Parcel's value after the incursion, and he replied, "Well, the value—it really has no value at all sold. The value of it is how much it keeps the commercial away from our homes." Plaintiff's counsel moved to strike the answer or in the alternative moved for a mistrial stating that defendants' counsel was trying to bring in the value of defendants' separate property in the subdivision. The trial court asked defendants' counsel to refrain from asking Mehlen about valuations of his property, however it overruled the objection.

Demba testified as the sole expert for defendants. He stated that he became familiar with Parcel by: (1) "looking at [it] a couple of times over the last year, year-and-a-half;" (2) spoke to some subdivision residents; and (3) walked around the general area of Parcel. He also stated that he was familiar with the general rental rates and values of sales of property in the general area.

In explaining his assessment of value of Parcel, he described three approaches to value that an appraiser uses, which are cost, income and sales comparison approach. After determining that the cost and income approaches were not applicable, Demba testified that he "considered the sales comparison approach to value, and that entails defining the subject property, defining the market for that property, who would buy it and what would they pay in order to buy that property based upon appraisal principles and economic principles." He defined market value as the exchange price between a seller and buyer without compulsion to sell or buy. After he stated that he believed the value of Parcel after the "total take" of the property was worth $0, defendants' attorney asked him what his opinion of the value of Parcel before versus the value of

Parcel after. Plaintiffs' attorney objected on the ground that it had not been "established as to what specific property [Demba] is talking about," and defendants' attorney volunteered to lay a better foundation. Defendants' attorney asked Demba if he was aware of and familiar with Parcel. After Demba answered affirmatively, defendants' attorney asked his opinion of the value of Parcel before the incursion. Demba stated the following:

\* \* \* \* \* \*

My opinion is that [Parcel], if a for sale sign would be put on [it] and the owners of [Parcel] were to receive offers, those offers would be in the $300,000 range for those property rights and the value of [Parcel] . . . . [the portion of remaining Parcel] would be worth very little because the property rights that entail to the owners of that [remainder] would have basically 99 percent would have been destroyed. So that even if there was an uneconomic remainder left, the value would be minimal and the total loss to the property owners before versus after, most of it, their property rights are taken away. So it would be minimal value as an uneconomical remainder after.

\* \* \* \* \* \*

At the end of Demba's direct testimony, the trial court denied plaintiff's motion to strike Demba's opinion of value in that his valuation was based on the sales comparison approach, but he failed to testify as to any comparable sales.

On cross-examination, Demba testified as follows:

\* \* \* \* \* \*

Q: Have you been involved in any sales of land in St. Charles County for $300,000 for 1/20th of an acre of residential property?

A: I don't think that a property is sold that small.

\* \* \* \* \* \*

In my search for the data base of sales in St. Charles for that small of an area, I have found no sales.

Q: Listen to my question, Mr. Demba. My question is, have you found any sales—have you been involved in any sales in St. Charles County of 2/10ths of an acre for $300,000?

A: No.

\* \* \* \* \* \*

Q: Mr. Demba, I think you state that you used the sales comparison method in evaluating [Parcel] that is being taken in this suit?

A: Yes.

Q: Okay. And you haven't given us any of your comparable sales, have you, sir?

A: Well, I haven't been asked.

Q: Have you given any of those to us?

A: Not yet.

\* \* \* \* \* \*

He initially testified that he believed the current use of Parcel is a residential buffer and is zoned residential; however, he later testified that he believed Parcel was zoned as commercial. He stated that Parcel's highest and best use would be as a commercial addition or assemblage to plaintiff's property and that he considered commercial values in valuing Parcel, although, we note the record indicates that he did not testify to any comparable sales of commercial property.

Plaintiff called Mueller, who testified that he used the sales comparison approach in valuing Parcel. He based his valuation on residential sales using three lots: (1) Lot 1 (11,761 square feet), located 1–2 miles northwest from Parcel on the west side of Highway K, which sold in

September 1999 for $30,800 or $2.60 per square foot; (2) Lot 2 (10,018 square feet), located in the same area as Lot 1, which sold in October 1999 for $30,800 or $3.07 per square foot; and (3) Lot 3 (46,173 square feet), located 7–8 miles southwest of Parcel, which sold in January 2001 for $38,000 or $.82 per square feet.

Mueller testified that in his opinion the value of Parcel is $4,453.16 or $2 per square foot before the taking and $3,673.60 after the taking. He testified that the damages therefore would be $800 taking into account that Parcel is residential property, it cannot be built upon because of its small size and "it would not meet setback requirements."

Initially, defendants presented their evidence, and following the close of plaintiff's evidence, defendants' counsel called Demba to make an offer of proof. Outside the hearing of the jury, he testified as to the increase in value as a result of plaintiff's property incursion and the diminution in value to defendants' property after the incursion but again did not mention any comparable sales.

Pursuant to the jury verdict, the trial court entered judgment of $300,000 in damages in favor of defendants. Subsequently, plaintiff's motions for new trial, remittitur and for amendment of the judgment was denied.

■ In its first point on appeal, plaintiff contends the trial court erred in refusing to strike Demba's expert opinion as to the amount of defendants' alleged damages and in refusing to grant plaintiff's request for remittitur because Demba's opinion was not based on facts or data of a type reasonably relied on by experts in the field in forming opinions or inferences on the subject and was not otherwise reasonably reliable or admissible under Section 490.065.3 in that: (a) the comparable sales approach used by Demba in estimating

condemnation damages required a comparison of the condemned property with voluntary sales of similar properties from the same general location, (b) Demba testified that he was using the comparable sales approach to calculate Parcel's fair market value but provided no evidence or testimony regarding any such comparable sales of similar properties and admitted on cross-examination that he found no such comparable sales during his research and preparation, (c) Demba's testimony therefore was not based on data which experts in the field reasonably rely on and was not otherwise reasonably reliable, and (d) Mueller offered the only evidence concerning comparable sales of property which involved prices of less than approximately $3 per square foot.

■ A trial court has broad discretion regarding the admission of evidence, including expert testimony. *State ex rel. Missouri Highway and Transp. Com'n v. McDonald's Corp.*, 872 S.W.2d 108, 111 (Mo.App. E.D.1994). Additionally, trial errors in the admission or in the exclusion of evidence, particularly in condemnation cases, will not normally result in our reversing a decision without a showing of substantial or glaring injustice. *Id.*

Expert testimony in civil actions is governed by Section 490.065, which provides in pertinent part:

\*  \*  \*  \*  \*  \*

3. The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing and must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable.

4. If a reasonable foundation is laid, an expert may testify in terms of opinion or inference and give the reasons therefor without the use of hypothetical questions, unless the court believes the use of a hypothetical question will make the expert's opinion more understandable or of greater assistance to the jury due to the particular facts of the case.

\*　　\*　　\*　　\*　　\*　　\*

■ Therefore, an expert's opinion must be founded upon substantial information, not mere conjecture or speculation, and there must be a rational basis for the opinion. *Missouri Pipeline Co. v. Wilmes,* 898 S.W.2d 682, 687 (Mo.App. E.D.1995). The restriction on speculative testimony by expert witnesses is not a technical rule of evidence but rather a needed protection against evidence of improper measures of damages being presented to the jury. *State ex rel. State Highway Commission v. Steinlage,* 545 S.W.2d 326, 331 (Mo.App. E.D.1976). The potential significant impact on a non-expert jury of expert testimony in the complex field of land appraisal seems to warrant extreme caution in the admission of such testimony. *Id.*

■ The comparable sales approach consists of comparing voluntary sales of similar properties from the same general location which occurred close in time to when the subject property was taken. *McDonald's Corp.,* 872 S.W.2d at 112. An expert testifying on the value of property in a condemnation proceeding may base his opinions in part upon his investigation and his inquiries concerning other sales, however, he should make careful inquiry into the facts concerning similar sales upon which he bases his opinion as to land values. *State ex rel. State Highway Commission of Missouri v. Berkeley School District,* 618 S.W.2d 195, 197 (Mo.App. E.D. 1981).

Here, defendants' expert, Demba, failed to testify to the facts or data upon which he based his opinion. On direct examination, he used the sales comparison approach to value Parcel, however, he failed to give any comparable sales of property before rendering his opinion that Parcel is valued at $300,000 before the incursion. On cross-examination, Demba admitted that he found no sales of St. Charles property as small in size as Parcel and that he did not testify to any comparable sales during his direct testimony because he had not been asked to. Demba did not testify to facts or data upon which he based his opinion. As a result, his opinion was not based on such information reasonably relied upon by experts in his field and, therefore, was unreliable. Therefore, evidence of improper measure of damages was presented to the jury constituting a substantial injustice. Thus, it is not necessary to address the issue of remittitur. Although our resolution of this point mandates reversal and remand, we shall address the remaining points on appeal since they may arise on retrial.

In its second point on appeal, plaintiff contends the trial court erred in overruling its objections to and admitting into evidence defendants' testimony concerning the diminution in value that defendants presumed the taking would cause to the surrounding neighborhood as a whole and to defendants' individual lots because such evidence was irrelevant and prejudicial in that: (a) the only correct measure of damages was the difference between the fair market value of the subject 2250–square–foot Parcel before the taking and its fair market value after the taking and (b) the presentation of such evidence to the jury was highly inflammatory and prejudicial as such evidence was irrelevant to the jury's determination of the difference in the fair market value of Parcel before and after

the taking, and the trial court erroneously admitted such evidence.

■ It is not disputed that the owner of real property while not an expert is still competent to testify as to the reasonable market value of his land. *Wood River Pipeline Co. v. Sommer,* 757 S.W.2d 265, 267 (Mo.App. E.D.1988). This rests on the assumption that he is particularly familiar with the characteristics of the land as well as its actual and potential uses. *Id.* Evidence of damage to realty is, by its very nature, speculative. *Id.* Any lack of professional experience on the part of the landowner goes to the weight and not the competency of the testimony. *Id.*

■ In a partial taking, the measure of just compensation is the difference between the fair market value of the landowners' property immediately before the taking and immediately after the taking. *State ex rel. State, etc. v. Select Properties,* 612 S.W.2d 866, 869 (Mo.App. E.D.1981). The amount of the award must also be within the limits established by the evidence. *Id.* Any element of damage which results in a diminution of the market value of the remaining land is a factor that must be considered in assessing damages. *Wood River Pipeline Co.* at 267. Defendants should recover for any decrease in value resulting from any factor a willing purchaser would consider detrimental to the remaining property. *Id.*

After reviewing the record, we fail to find any testimony of Walker or Mehlen concerning the diminution of value the partial taking would cause to the surrounding neighborhood or their individual lots. Instead, the record indicates that their testimony is principally centered upon the purpose and use of Parcel. As such, point two is denied.

■ In its third point on appeal, plaintiff contends the trial court erred in deny-ing its motion to amend the judgment by reducing the amount of the judgment to 48% of the verdict because the judgment erroneously awards to all defendants, including those who did not file exceptions, damages based on the jury's verdict of $300,000 in that Section 228.358 requires non-excepting defendants' recovery to be limited to the amount of the Commission's award or, alternatively, because the judgment erroneously gave a windfall to the owners of only 48% of the interests in Parcel, in that: (1) Parcel is collectively owned by all owners of lots in the subdivision as tenants in common, but only 48% of those owners filed exceptions; (2) the verdict of $300,000 represents the full damages to the interests of all lot owners, including the 52% who did not file exceptions; and (3) the excepting lot owners have no right to share in that portion of the judgment representing the interests of the non-excepting lot owners.

Section 228.358. Report of commissioners, exceptions to, filed when—jury impaneled, when—judgment, contents, provides:

Within ten days after notification of the Commissioners' report, either party may file exceptions to the report and assessment of damages. If no exceptions are filed, the court shall enter a judgment establishing or widening the private road and assessing the damages as set forth in the Commissioners' report to be paid by the plaintiffs to the defendants. *If either party files exceptions, the court shall impanel a jury and conduct a trial to determine the amount of damages to be paid by the plaintiffs to the defendants.* Thereafter, the court shall enter a judgment establishing or widening the private road and assessing the damages as set forth in the jury's verdict, and the provisions of the interlocutory order as provided in Section 228.352 shall be included in such judg-

ment. The private road so established or widened shall be a permanent easement appurtenant to the plaintiffs' real property. (emphasis added)

██ When the trial court awards a trial by jury as to the damages sustained, the report of the Commissioners is of no effect, and the cause then stands as though no Commissioners had ever been appointed. *Siemers v. St. Louis Electric Terminal Ry. Co.*, 348 Mo. 682, 155 S.W.2d 130, 135 (1941).

Here, plaintiff filed its exceptions to the Commissioners' report and assessment of damages prior to defendants filing their exceptions. In its exceptions, plaintiff stated, "In consequence of [plaintiff's] exceptions, [plaintiff] requests a jury trial to determine the amount of damages to be paid to defendants." Since a jury trial was conducted, the cause stood as though no Commissioners had ever been appointed.

Since plaintiff filed its exceptions, the jury's verdict became applicable to all defendants, even though only 48% of defendants had filed exceptions. Section 228.358. Accordingly, plaintiff's point three is denied.

Judgment reversed and remanded.

GARY M. GAERTNER, SR., and WILLIAM H. CRANDALL, JR., JJ., concur.