**ST. CHARLES COUNTY, Appellant,**

v.

**Lloyd B. OLENDORFF, et al., Exceptions of Anita J. Fischer, Parcel No. 99, Respondents.**

**No. ED 88296.**

Missouri Court of Appeals,
Eastern District,
Division Five.

July 17, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 4, 2007.

Application for Transfer Denied Oct. 30, 2007.

Greg H. Dohrman, St. Charles, MO, for appellant.

John T. Shaw, St. Charles, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

St. Charles County (the "County") appeals from a trial court judgment granting compensation to Dr. Anita Fisher ("Landowner") in a condemnation action. In its appeal, the County contends that the trial court erred by: (1) failing to exclude Landowners' appraiser's testimony as to the valuation of a temporary construction easement; and (2) refusing to submit a jury instruction offered by the County. Because we find that the trial court did not abuse its discretion in admitting Landowner's appraiser's opinion and did not commit prejudicial error in refusing to submit the County's proffered instruction at trial, we affirm.

### Facts and Procedural History

Landowner owns and operates a veterinary clinic on Birdie Hills Road in St. Charles County, Missouri. The County sought to take, through eminent domain, certain property from Landowner in order to widen and improve Birdie Hills Road which, unimproved, consisted of two lanes of asphalt with open drainage ditches and no sidewalk.

On or about May 23, 2003, the County filed its Condemnation Petition against several landowners holding parcels necessary to the development and construction of the Birdie Hills Road Improvement Project. The Condemnation Petition named Landowner as one of the defendants. The trial court appointed commissioners, who awarded Landowner $30,000. Both Landowner and the County filed exceptions to the commissioners' award, requesting a jury trial on the issue of damages.

On or about July 3, 2003, the County acquired from Landowner, through eminent domain, a strip of new right-of-way, near the intersection of Birdie Hills Road and Mexico Road. The property at issue is approximately seventeen to eighteen-feet wide, running alongside road totaling 4,284 feet in length, and a temporary slope and construction easement ("TSCE") 4,438 square feet in size adjacent to the new right-of-way. The TSCE allowed the County to use, occupy and conduct construction activities on this area for the duration of the Birdie Hills Project.

Construction began on the Birdie Hills Project on or about February 9, 2004 and ended on or about November 28, 2005. The Birdie Hills Project replaced the asphalt road surface with concrete, widened the road to five lanes, added curbs, gutters, underground storm sewers and sidewalks.

The trial court conducted a two-day jury trial on the damages issue in late January 2006. The County filed a Motion in Limine seeking to exclude certain evidence at trial. Specifically, the County objected to Landowner's presentation of: (1) expert testimony regarding a "75% impact" to the property outside the TSCE during the duration of the easement; and (2) any evidence of damages or inconvenience due to general construction activity. In response to the County's Motion in Limine, before trial, the trial judge held a pre-trial hearing outside of the presence of the jury to consider the admissibility of Landowner's expert's testimony. After hearing Landowner's expert testify at the pre-trial hearing, the trial judge entered a ruling denying the County's Motion in Limine.

At trial, Landowner's appraiser and the County's appraiser each offered valuation opinions. Landowner's appraiser, John Schlueter, opined that the fair-market value of the Landowner's property before the taking was $645,600 and after the taking it

was $615,800 exclusive of the TSCE. Mr. Schlueter valued the damages associated with the TCSE at $104,700. As a result, Mr. Schlueter concluded that the total damages Landowner suffered as a result of the taking were $134,500.

The County's appraiser, Russell Lauer, testified that the fair market value of the Landowner's property was $579,360 before the taking and $557,297 after the taking, exclusive of the TSCE. Mr. Lauer valued the damages associated with the TSCE at $4,571. As a result, Mr. Lauer determined that the total damages Landowner suffered as a result of the taking were $26,634.

At the conclusion of the evidence, the jury returned a verdict assessing the total damages to Landowner at $74,634.20. Shortly thereafter, the trial court entered its judgment against the County in accordance with the jury's verdict.[1] The County filed its Motion and Suggestions for New Trial, or in the alternative, For Remittitur. Landowner filed her opposition to the motion and memorandum in support. By operation of Rule 78.06, the trial court overruled the County's Motion for New Trial. The County appeals.

### Standard of Review

The decision to admit or exclude expert testimony is a matter of trial court discretion and we will not overturn that decision absent an abuse of discretion. *Rigali v. Kensington Place Homeowners' Assoc.*, 103 S.W.3d 839, 844 (Mo.App.E.D. 2003). In condemnation cases, trial court errors in the admission or exclusion of evidence will not typically result in our

reversing a decision without a showing of substantial or glaring injustice. *Id.* "As a rule questions as to the sources and bases of the expert's opinion affect the weight, rather than the admissibility of the opinion, and are properly left to the jury." *Doe v. McFarlane*, 207 S.W.3d 52, 62 (Mo. App.E.D.2006).

We review allegations regarding a trial court's improper refusal to give a proffered instruction for an abuse of discretion. *City of Sullivan v. Truckstop Rests., Inc.*, 142 S.W.3d 181, 197 (Mo.App. E.D.2004). An instruction must be supported by substantial evidence. *Id.* Although we must review the evidence and reasonable inferences in the light most favorable to the submission of the instruction, we will not reverse a verdict for instructional error unless the error is prejudicial in that it materially affects the merits of the action. *Id.*

### Discussion

#### A. Expert Testimony

In its first point on appeal, the County asserts that the trial court erred when it failed to exclude Landowner's expert appraiser's valuation of the damages Landowner suffered as a result of the TCSE. In response, Landowner argues, in essence, that the issues raised by the County regarding Mr. Schlueter's testimony go to the weight, rather than the admissibility, of Mr. Schlueter's expert testimony.

It is well-established that Section 490.065 sets forth the standard for the admission of expert testimony in civil actions.[2] *State Bd. of Registration for the Healing Arts v. McDonagh*, 123 S.W.3d

---

**1.** The Judgment entered by the trial court required the County to pay $44,634.2, a figure representing the difference between the Commissioners' Award of $30,000—an amount the County had previously paid into the court— and the jury's verdict of $74,634.20. The

Judgment included pre-judgment interest of $6,918.91 for a total Judgment of $51,553.00.

**2.** All statutory references are to RSMo 2000 unless otherwise noted.

146, 152 (Mo.banc 2003). Pursuant to Section 490.065.1:

> In any civil action, if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

Section 490.065.3 provides:

> The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing and must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable.

The County contends that Mr. Schlueter's valuation testimony should have been excluded because it was impermissibly speculative and based on an unreliable methodology. As the Supreme Court articulated in *McDonagh*, it is the responsibility of the trial court to independently assess the reliability of the facts and data relied on by the expert in forming his opinion. 123 S.W.3d at 156.

Before trial, the trial judge held a pre-trial hearing outside of the presence of the jury to consider the admissibility of Mr. Schlueter's expert testimony.[3] At the pre-trial hearing, Mr. Schlueter detailed his opinions and the valuation methodology he used to reach those opinions. The County's counsel extensively cross-examined Mr. Schlueter about his opinions and the methodology used to formulate those opinions. Following the pre-trial hearing, the trial judge entered a ruling regarding the

admissibility of Mr. Schlueter's testimony at trial and stated in relevant part:

> I have read all of the cases that have been supplied to me. I have looked at the briefs of the parties. I have looked at the Missouri Bar publication on condemnation practice, and I don't believe that there is anything totally and directly on point. I am aware of the fact that the Court must be a gatekeeper as indicated in the [*McDonagh*] matter. I am aware of the two-pronged test for admissibility. Because the factual circumstances of this case are different from that case, I don't think it's appropriate to go through all of the different factors. But I believe that because this is an issue not of defendant having the wrong kind of expert, that necessarily [*McDonagh*] is not as persuasive as it might be otherwise, I am going to deny the [c]ounty's motion in limine. I am going to find that this witness is an expert and may testify about the matter in question.

Both the County and Landowner cite the same case for the general rule that "damages for a temporary partial taking are 'the reasonable rental value of the land temporarily acquired for the time which plaintiff proposed to use it absolutely … and (besides) the damages which the jury might find from the evidence will result to [the] remaining land because of the temporary use.'" *State ex rel. Mo. Hwy. & Transp. Comm'n v. Beseda*, 892 S.W.2d 740, 741 (Mo.App.E.D.1994). Review of the record supports the conclusion that Mr. Schlueter followed the *Beseda* formula when he rendered his valuation opinion. When the County's attorney asked Mr. Schlueter how he valued damages resulting from the TSCE, Mr. Schlueter responded:

---

**3.** The parties do not dispute Mr. Schlueter's extensive qualification to render a valuation opinion.

The temporary construction area of 4,438 square feet was valued at $3 per square foot or $13,314 annually with a 10 percent return or $13,314 annually with a 10 percent return or $1331 times the 2.25 years that they utilized the property for a total of $2,995, say $3,000.

And then the second component to that was the rental or the consideration of the impact of the easement to the entire property. So what I had done here is taken out the equivalent of $13,314, which was the area under the easement, 4,438 square feet at $3. 13,314 was subtracted. [sic] And then the balance would be from that value. After value would be $602,500 at a 10 percent return would indicate $60,250.

\* \* \* \* \* \*

I considered not the entire property to be completely useless, largely useless but not completely useless, during the construction period. So I applied a 75 percent factor to that annual amount of 60,250 which indicates $45,188 due the owner per year as an impact resulting from the easement times the 2.25 years, which amounts to $101,673.

So the summation of that would be the value of the temporary easement, the land only of 3,000, plus the rental value or diminished rental value of the total property of 101,700 for a total construction easement figure of $104,700.

The County attacks Mr. Schlueter's opinion on the grounds that it was: (1) not based on market data; and (2) derived "using a method not relied upon by experts in the real estate appraisal field."

First, our Supreme Court has rejected the notion that an appraiser's opinion must be based on specific market data. *See State ex. rel. State Hwy. Comm'n v. Koberna,* 396 S.W.2d 654, 663 (Mo.1965). In *Koberna,* the Court held that it is not necessary for an expert's opinion to be based on market data, such as comparable sales, so long as there is other factual basis for the expert's opinion. *Id.* Here, Mr. Schlueter based his rental figures on the appraised fair market value of the property, which Mr. Schlueter testified is the standard practice in the appraisal industry. Mr. Schlueter explained that, due to the absence of available market data, he employed a functional obsolescence principle to calculate the temporary damages resulting from the TSCE.[4]

■ Despite the County's argument on appeal, the County's appraiser confirmed at trial that it is common for an appraiser to use his expertise and experience to arrive at subjective percentage adjustments rather than relying on comparable market data. Moreover, in light of the fact that the record substantiates that Mr. Schlueter's opinions were supported with substantial data, his failure to provide specific, quantitative values for each factor he considered does not warrant reversal. *See State ex rel. Mo Hwy. & Transp. Comm'n v. Edelen,* 872 S.W.2d 551 (Mo.App.E.D. 1994).

The County's assertion that the trial court erred in admitting Mr. Schlueter's opinion because he failed to use methods reasonably relied on by experts in the field is equally unpersuasive. As an initial matter, the County has not contended that Mr.

---

4. During the pre-trial hearing, Mr. Schlueter explained that functional obsolescence is something that "provides a limitation on usity resulting in an obsolescence, and that can be both curable or non-curable." Mr. Schlueter explained that he considered the obsolescence in this case to be curable in that the TSCE impacted the usability and desirability of the property for a period of time. However, once the project was complete, the obsolescence would be removed.

Schlueter was unqualified to act as an expert appraiser in this matter. Moreover, beyond claiming Mr. Schlueter's opinion was not based on market data, as discussed above, the County cites no record evidence for the proposition that Ms. Schlueter's opinion was "derived using a method not relied upon by experts in the real estate appraisal field." To simply state that an expert's opinion is "impermissibly speculative," without more, is insufficient to elevate the argument beyond a question of the weight of the evidence. *See Doe*, 207 S.W.3d at 62.

■ The County's references to general construction damages and a failure to use a discount factor are similarly deficient. Although the County contends Landowner's expert's opinion includes general damages for "ingress/egress to the property," the County does not establish that the expert failed to discuss injuries or damages "special or peculiar" to Landowner.[5] Likewise, a conclusory statement in the County's brief such as "simple principles of finance would require the use of a discount factor," does not render the expert's opinion inadmissible as a matter of law, in the absence of any discussion of or citation to the record or relevant case law.[6]

The County's contention that Mr. Schlueter impermissibly based his valuation on an improper "reverse-income approach" is similarly without merit. Review of the record establishes that Mr. Schlueter did not employ this approach. Rather, as indicated by his trial testimony, Mr. Schlueter used a comparable sales and a cost-less-depreciation approach to valuing the property. Point denied.

## B. Jury Instruction

In its second point on appeal, the County asserts the trial court erred when it refused to give a modified version of MAI 34.03. In response, Landowner contends that, even assuming the County was entitled to the instruction, the failure to submit a version of MAI 34.03 was not prejudicial error.[7]

■ MAI 34.03 provides as follows:

"In determining the value of defendant's remaining property, you must not consider any general benefit which is conferred upon all property within usable range of (here describe the improvement . . .)."

The County's proposed instruction, Instruction A, modified MAI 34.03 and provided as follows:

In determining the value of defendant's remaining property, you must not con-

---

5. In its reply brief, the County identifies areas in the record where the expert mentions issues of access to the property. However, a mere mention of these issues does not render the expert's opinion inadmissible. *See Doe*, 207 S.W.3d at 62.

6. The County's contention, in its reply brief, that the standard jury instruction requires a present value finding is not support for excluding expert testimony on the basis of the expert's failure to use a discount factor. Obviously, the County had the opportunity to cross-examine the expert on this issue.

7. Landowner argues that the County failed to preserve this issue because it did not object to the trial court's failure to submit Instruction A on the grounds that Instruction A constituted a mandatory instruction. Contrary to the Landowner's assertion, the record establishes that the County stated that the "general detriment withdrawal and that should—that is also a part of the instruction at the request of the plaintiff." After colloquy on this issue, the trial judge refused the instruction stating, among other things, "I think the notes on use say it is permissive, not mandatory." In its Motion for New trial, the County specifically raised the issue that Instruction A was mandatory and failure to give it was error. Accordingly, the County adequately preserved this issue.

sider (a) any general benefit which is conferred upon, or (b) any general detriment suffered by, all property within usable range of the Birdie Hills Road Improvement Project.

The modification results in the addition of general detriment language to the approved general benefit language.

The trial court refused to give Instruction A on the basis that MAI's Notes on Use "say it's permissive, not mandatory." The Notes on Use to the MAI provide that MAI 34.03 "may be given at the defendant's option." *See* Notes on Use, MAI 34.03 (6th ed.). We have likewise held that "[i]t is error to refuse to give 34.03 when requested by defendants." *Edelen*, 872 S.W.2d at 554.

Here, the plaintiff, rather than the defendant, sought use a single MAI 34.03 instruction to clarify both general benefits and general detriments in one instruction. In *State ex rel. Missouri Highway and Transportation Commission v. Jim Lynch Toyota, Inc.*, we held that, in the context of a plaintiff's request for a MAI 34.03 instruction involving only general detriments, "MAI 34.03 must be given if supported by evidence, whether the subject matter is general benefits or general detriments." 830 S.W.2d 481, 489 (Mo. App.E.D.1992). Although we did not specifically rule in *Jim Lynch Toyota* that MAI 34.03 is mandatory when a plaintiff offers MAI 34.03 and modifies it to include both general detriments and general benefits, the reasoning in *Jim Lynch Toyota* supports the conclusion that even when requested by plaintiff and modified to include general detriments and general benefits, the trial court must give MAI 34.03. *See id.* Thus, in refusing Instruction A, the trial court erred.

■ A finding of trial court error where the trial court refused to submit a plaintiff-requested MAI 34.03 instruction does not require reversal. *Id.* Rather, "Rule 70(c) necessitates a determination of whether the error is prejudicial." *Id.* However, as in *Jim Lynch Toyota*, the trial court's error was not prejudicial. *Id.*

The County contends that the jury "was left without the complete guidance and clarification it needed to properly consider the evidence in the case." As the County correctly acknowledges, the purpose of MAI 34.03 is to assist the jury in properly assessing evidence of general benefits and general detriments. As an initial matter, the record does not establish that Landowner introduced evidence from which a jury could award damages to her based on general detriments "suffered by all property within usable range of the Birdie Hills Road Improvement Project." Likewise, although Instruction A includes references to general benefits, as well as general detriments, nowhere on appeal has the County identified specific evidence of general benefits to which the jury was exposed or described how, in the absence of instruction A, such evidence prejudiced the County. Accordingly, we cannot say that the jury needed guidance and clarification to complete its task, as the County claims.

Moreover, as in *Jim Lynch Toyota*, the County failed to furnish this court with a transcript of the closing arguments. *See id.* Thus, we were not able to determine whether the County was foreclosed from arguing its position regarding general detriments and general benefits. Having failed to demonstrate that the trial court's refusal of Instruction A: (1) left the jury without the guidance it needed to properly consider evidence in the case; and (2) prevented the County from arguing to the jury that it should not consider general detriment or general benefits common to other landowners as additional damages, the County has not demonstrated preju-

**500**

dice sufficient to support reversal. Point denied.

### Conclusion

The judgment of the trial court granting Landowner $74,643.20 for the taking of her land is affirmed.

BOOKER T. SHAW, C.J., and ROBERT G. DOWD, JR., J., Concur.