ST. LOUIS COUNTY, Missouri,
Appellant,

v.

MEYER PROPERTIES,
LLC, Respondent.

No. ED 89923.

Missouri Court of Appeals,
Eastern District,
Division One.

April 29, 2008.

Robert E. Fox, Jr., Clayton, MO, for appellant.

Robert L. Devereux, St. Louis, MO, for respondent.

## Introduction

KENNETH M. ROMINES, Judge.

In this partial takings case, the County appeals the award of damages as based on improper evidence. We affirm.

### Factual and Procedural Background

St. Louis County ("the County") filed a condemnation petition for the purpose of widening Old State Road. Meyer Properties owned a parcel of property ("the Property") on the east side of Old State Road, part of which was a subject of the petition. The Property consists of approximately 40,508 to 43,560 square feet, and at the time of the petition, there was a house on the property that occupied approximately 1,056 square feet. The County also obtained an easement for a drain that would occupy approximately one third to one half of the Property.

On 22 November 2005, the circuit court appointed Commissioners to assess the damages to several properties affected by this project, including the Property at issue here. The Commissioners valued the damages to the Property at $53,000. On 2 December 2005, the County paid that amount into the court's registry, and shortly thereafter Meyer Properties withdrew the money. On 20 December 2005, both parties filed exceptions to the Commissioners' award. In May 2007, the parties tried the case before a jury. The parties each offered expert testimony to establish the value of damages to the Property as a result of the condemnation.

Meyer Properties called Ernest Demba, who had performed two appraisals on the Property. In both, he valued the property at $272,250 before the taking. In the first appraisal, Demba concluded that the highest and best use of the Property before the condemnation was as vacant ground for commercial use. He used a sales comparison approach to arrive at a before value of $6.25 per square foot. He opined that the condemnation left the Property with no value and thus constituted a total taking of the Property. However, after this first appraisal, the County did not accept that it was a total taking and did not acquire the Property. Therefore, Demba performed another appraisal, this time looking not only at the physical land, but also the economic situation concerning the Property. He concluded that the highest and best use of the Property after the taking was as a rental home. He arrived at this conclusion using a method he called the Income Approach. Through this approach he performed a comparative sales analysis based on the rent values of similar properties. He used a gross rent multiplier to determine what prospective tenants would pay to rent the property. He also took into account the risks involved with selling the Property due to its location, the easements on the land, and the amount of construction required to have it in usable condition as a rental property. He arrived at an after-condemnation value of $74,500. Thus, he concluded the damages to the Property were $197,750.

The County put forth the opinions of two experts: Thomas Mader and Michael

Green. Mader concluded that the highest and best use of the Property was as vacant commercial ground. He used a comparable sales approach to value the land at $295,400 before the taking. He concluded that the damage to the Property due to the taking was $45,065. This included the loss of land due to a permanent drainage easement the County would hold, a clearance license, and some landscaping lost on the portion of land taken by the County. He determined there was no damage to the remainder of the Property from the partial taking.

Green testified that the highest and best use of the Property was residential because the Property was zoned for residential use at the time of the taking. Using a comparable sales approach for residential property, he valued the Property before the taking at $200,000. He testified that the damages to the Property from the taking would be $52,728, which included the value of the land lost, the loss in value of the house on the land due to its proximity to the widened road, payment for the permanent drain easement, and the difficulty of selling the house after the taking.

The County then presented evidence purporting to show that the Property could feasibly be developed commercially after the partial taking. At the close of all the evidence, the court gave MAI 9.02,[1] the verdict director for a partial taking, which had been submitted by Meyer Properties. The jury returned a verdict in favor of Meyer Properties and awarded damages in the amount of $130,000.

The County raises one point on appeal. The County argues that the trial court should have excluded Demba's testimony because Demba's method for calculating the Property's value is inadmissible in a partial takings case.

## Standard of Review

We review a trial court's admission or exclusion of evidence for abuse of discretion. *St. Charles County v. Olendorff,* 234 S.W.3d 492, 495 (Mo.App. E.D. 2007). In condemnation cases, we will not reverse unless the error produced substantial or glaring injustice. *Id.* However, whether Demba's testimony indicated that the method of valuation he used was the income approach is a question of law. We review questions of law *de novo.*

## Discussion

The basic rule in takings cases is that the condemning authority must compensate the owner of the property for the full market value of that property. *See City of St. Louis v. Union Quarry & Const. Co.,* 394 S.W.2d 300, 305 (Mo.1965). Missouri recognizes three general methods for calculating the fair market value of property: the comparable sales method, the replacement cost approach, and the capitalization of income approach. *E.g., Del–Mar Redevelopment Corp. v. Associated Garages, Inc.,* 726 S.W.2d 866, 869 (Mo.App. E.D.1987). However, in partial takings cases, use of the capitalization of income approach is improper because it is too speculative, remote, and uncertain. *E.g., Shelby County R–IV Sch. Dist. v. Herman,* 392 S.W.2d 609, 613–14 (Mo. 1965).

The parties agree that this case concerns a partial taking, and neither objected to the verdict director for a partial

1. MAI 9.02 states "You must award defendant such sum as you believe is [was] the difference between the fair market value of defendant's whole property immediately before the taking [on (*insert date of appropriation*)] and the value of defendant's remaining property immediately after such taking, which difference in value is the direct result of the taking and of the uses which plaintiff has the right to make of the property taken."

taking at trial. The County made a running objection to any admission of Demba's opinion as to damages during trial because the County argued Demba used the income approach in determining value. The County based this on the facts that Demba's written analysis was entitled "Income Approach (After Taking)" and that he also took into account the risks associated with selling the Property. Demba testified that while that was the title, the approach that he developed and used was actually a comparison approach with rental prices rather than sale prices. The trial court overruled the County's objection and allowed the testimony. Our inquiry is whether, as a matter of law, Demba used the income approach in forming his opinion as to damages.

■ First, Demba's written report shows that he compared the rental amounts of similarly situated properties and came up with a gross rent multiplier, which he then used to determine the fair market value for the lost property. A sales comparison approach considers voluntary sales of other similar properties made in the general vicinity and close in time to the taking. *Del–Mar Redevelopment Corp.*, 726 S.W.2d at 869. Here, although Demba was considering rental value and not sale price, he was making comparisons of the rental value of similar properties. Furthermore, his gross rent multiplier was derived from the sale prices of the properties he examined. Conversely, the capitalization of income approach takes into account the income a property has been earning and uses a capitalization rate to project the income that the property would have earned after deducting expenses. *See Hermel, Inc. v. State Tax Comm'n*, 564 S.W.2d 888, 891 (Mo.1978) (applying and distinguishing both methods). The use of a gross rent multiplier is different than that of a capitalization rate.

This is confirmed both by the explanation in *Hermel*, and in Demba's own written report, which states:

> When property is leased at other than market rent or is vacant, a market rent is established and that rent with normal expense deductions is capitalized to arrive at an indication of value by the income approach for the fee simple interest. *Another approach* is to consider the [Gross Rent Multiplier] measure for similar smaller investment properties similar to the subject.

(emphasis added). Demba's report then goes on to state that he utilized the latter approach:

> The following summary data is on leases similar to our subject property. To estimate the value of the subject, we use a gross rent multiplier.

■ Second, the County takes issue with Demba's inclusion of discounts in value due to risk incurred in ownership of the Property. The County seems to conclude that only an income approach considers risk, and therefore because Demba considered risk, he was using an improper method. However, all of the approaches allow for considerations of risk. "In determining fair market value each case must be considered in the light of its own facts, not on the basis of some artificial rule, but of sound judgment and discretion on a consideration of all relevant circumstances." *City of St. Louis v. Union Quarry & Const. Co.*, 394 S.W.2d 300, 305 (Mo.1965) (citing 29A C.J.S. Eminent Domain § 136(5)). The differing considerations and the appropriate weight afforded them must be adapted to the particular facts of the case. The three established methods are helpful for determining a general value, but each property is unique.

Specifically, the County argues that Demba's discount in value due to the fact that the sale would be a "distressed sale"

was too speculative. Demba explained that one consideration leading to his conclusion that this would be a distressed sale was the question "will somebody live this close to the front of Old State Road with this type of backyard." Tr. 156. In *Shelby,* a case cited by the County, our Supreme Court found that it was not an abuse of discretion for the trial court to allow an expert to testify to the impact the location of the land had on its value. 392 S.W.2d at 617. The County's other objections to Demba's factors similarly concerned the unique aspects of the Property and do not change the fact that the underlying method he used was a comparison approach.

Therefore, the trial court did not err as a matter of law in allowing Demba's testimony, because it was based on a comparison approach, which is admissible in partial takings cases. Furthermore, we see no substantial or glaring injustice in allowing evidence of Demba's other considerations in this case concerning the unique aspects of this property. These opinions were subject to cross-examination, and the County put forth competing expert opinions.[2] In fact, Green's opinion also included such considerations as the proximity to Old State Road and the difficulty of selling the Property, yet the County does not object to the jury's consideration of his opinion. We find that the trial court did not abuse its discretion in allowing opinion testimony as to these various aspects of this particular property.

### Conclusion

Demba's testimony was not inadmissible as a matter of law, because he used a sales comparison approach for determining value. The trial court did not abuse its discretion in allowing him to testify to the

additional factors he considered due to the uniqueness of the Property.

AFFIRMED.

KATHIANNE KNAUP CRANE, P.J., and ROBERT G. DOWD, JR., J., concurs.

---

2. However, the County's site proposals were less than ideal: in one scenario, the front door of the building opened directly into a parking space.