GLAIZE CREEK SEWER DISTRICT OF JEFFERSON COUNTY, Missouri, Plaintiff/Respondent,

v.

Gary GORHAM and Sheila Gorham, Defendants/Appellants.

No. ED 94958.

Missouri Court of Appeals, Eastern District, Division Three.

March 22, 2011.

Robert K. Sweeney, Hillsboro, MO, for Plaintiff/Respondent.

Jerome Wallach, Stanley J. Wallach, St. Louis, MO, for Defendants/Appellants.

Before SHERRI B. SULLIVAN, P.J., CLIFFORD H. AHRENS, J., and LAWRENCE E. MOONEY, J.

SHERRI B. SULLIVAN, P.J.

*Introduction*

Gary and Sheila Gorham (collectively Appellants and respectively, Mr. Gorham and Mrs. Gorham) appeal from the trial court's judgment entered upon a jury verdict assessing their damages from the appropriation of their property by Glaize Creek Sewer District of Jefferson County, Missouri (Respondent) to be $0.00. We reverse and remand.

*Factual and Procedural Background*

Appellants live in Jefferson County. In 2008, Respondent filed a Petition in Condemnation, seeking to acquire a permanent sewer easement and a temporary construction easement through the back yard of Appellants' property in order to place a sewer line. The permanent easement is 15 feet wide and 161 feet long.

Respondent commenced work on December 1, 2008, and worked for six months. During that time, Respondent used a thirty-foot wide temporary easement as a staging and storing area for machinery and equipment. Respondent cut down trees, brought in equipment to grind and chip the cut trees, cut through the roots of at least nine trees that were left standing, altered the grade of the back yard, and left a permanent manhole. Mrs. Gorham testified that the loss of trees spoiled the view from the back of her home, and that lights are visible from commercial properties at night, when they were not before.

The case proceeded to trial on the issue of Appellants' damages as a result of Respondent's taking. Appellants called Mrs. Gorham as a witness. Mrs. Gorham is a state certified appraiser since 1991, as well

as the property owner. Mrs. Gorham testified as to the diminution in market value of the property due to the taking, including damage to the view from the home; the torn-up condition of the backyard; the inability to build a pool or other improvement across the buried sewer line; the loss of trees; and the loss of marketability of the property during Respondent's construction.

Mrs. Gorham appraised the property in accordance with the Uniform Standards of Professional Appraisal Practices (USPAP). Using the comparable sales method, and the values of various comparable properties on her block, she concluded a before value for the property of $200,000.00 and an after value of $171,000.00, resulting in damages of $29,000.00.

Respondent called an expert witness as well. Respondent's expert is a certified real estate appraiser since 1992 and also holds a real estate broker's license since 2005. Respondent's expert testified that he visited Appellants' property on January 13, 2010, two weeks before trial, and again a few days before trial. Respondent's expert testified that he saw the property after "all the work had been done." He admitted that he did not inspect the entire property.

Respondent's expert testified that his assignment was "to determine whether or not there was an impact on the property from the easement; not to actually value the entire property but whether or not that easement had an adverse impact or effect on the property." He did not perform an appraisal on the property or render an opinion of the fair market value of the property either before or after the taking. He testified as follows:

Q: I just want to clarify, [Respondent's expert], what we're here today to determine is the fair market value on the date of the taking and the fair market value on the date after the taking. Do you have an expert opinion as to what that is?

A: An actual number, no.

Q: Do you have an opinion as to whether or not there was a diminution or a decrease in the value of the property before the taking and after the taking?

A: I do. And it was, as I said, as I understood the assignment was to determine whether or not that easement had an adverse impact on the property.

Q: And your opinion is?

A: It does not.

Appellants objected and asked that the testimony of Respondent's expert be stricken on the grounds that the opinion did not conform to the jury instruction, which measures damages as the difference between the value before the taking and the value after the taking. Appellants further objected that "this witness brings nothing ... he brings nothing to help them understand." The trial court overruled Appellants' objection and motion to strike.

On cross-examination, Respondent's expert was questioned as to whether he followed USPAP standards, to which he responded: "I'm not testifying as to value as an appraiser. I didn't do a report. I didn't inspect the entire property." He further stated:

A: If I render an opinion, a number, if I render a value, I am required to have a work file. But I am not testifying on a total value of this property. I was asked to give an opinion as to whether or not that easement had an adverse impact on the property. My opinion is, as a broker and as an appraiser, it does not.

Q: Okay.

A: I'm not talking about value.

At the conclusion of evidence, Appellants renewed their objection to Respondent's

expert's testimony and offered a withdrawal instruction. The trial court overruled the objection and rejected the proffered instruction. After deliberation, the jury returned its verdict of $0.00. This appeal follows.

## Points on Appeal

In their first point, Appellants maintain that the trial court abused its discretion in admitting the testimony of Respondent's expert, because the testimony failed to conform to the proper measure of damages, was irrelevant, lacked foundation, and served only to confuse the jury to the prejudice of Appellants.

■ In their second point, Appellants claim that the trial court erred in refusing to grant a new trial, because the verdict of $0.00 in damages was against the weight of the evidence in that Mrs. Gorham's opinion of $29,000.00 in damages was the only admissible evidence of Appellants' damages.

## Standard of Review

■ The decision to admit or exclude expert testimony is a matter of trial court discretion and we will not overturn that decision absent an abuse of discretion. *St. Charles County v. Olendorff*, 234 S.W.3d 492, 495 (Mo.App. E.D.2007), *Rigali v. Kensington Place Homeowners' Assoc.*, 103 S.W.3d 839, 844 (Mo.App. E.D.2003). In condemnation cases, trial court errors in the admission or exclusion of evidence will not typically result in our reversing a decision without a showing of substantial or glaring injustice. *Olendorff*, 234 S.W.3d at 495; *Rigali*, 103 S.W.3d at 844. " 'As a rule questions as to the sources and bases of the expert's opinion affect the weight, rather than the admissibility of the opinion, and are properly left to the jury.' " *Olendorff*, 234 S.W.3d at 495, quoting *Doe v. McFarlane*, 207 S.W.3d 52, 62 (Mo.App.

E.D.2006). However, in cases where the sources relied on by the expert are " 'so slight as to be fundamentally unsupported,' " the opinion should be excluded because testimony with that little weight would not assist the jury. *McFarlane*, 207 S.W.3d at 62, quoting *Wulfing v. Kansas City Southern Industries, Inc.*, 842 S.W.2d 133, 152 (Mo.App. W.D.1992); see also *Goddard v. State*, 144 S.W.3d 848, 854 (Mo.App. S.D.2004).

## Discussion

■ "The ultimate objective in this case, as in all condemnation cases, is to enforce the constitutional mandate 'that private property shall not be taken or damaged for public use without just compensation.' " *City of St. Louis v. Union Quarry & Const. Co.*, 394 S.W.2d 300, 305 (Mo.1965); Mo. Const. art. I, sec. 26. Section 26 of our Constitution goes on to dictate that "such compensation shall be ascertained .... in such manner as may be provided by law." Missouri law, in Section 523.001(1),[1] provides that in partial takings, the measure of compensation is "the difference between the fair market value of the entire property immediately prior to the taking and the fair market value of the remaining or burdened property immediately after the taking."

Respondent's expert testified that his assignment was "to determine whether or not there was an impact on the property from the easement; not to actually value the entire property but whether or not that easement had an adverse impact or effect on the property." He *admitted* that he did not assess a fair market value of the entire property before and after the taking. Rather, he visited the property twice after the project was completed and formed an opinion as to whether or not there was a diminution in the property's

---

1. All statutory references are to RSMo 2006, unless otherwise indicated.

value by the easement. His expert opinion was there was none. He testified that the easement had no adverse impact on the property. He presented no data on how he reached this conclusion. This omission alone is fatal to his testimony. See *State ex rel. Missouri Highway and Transp. Com'n v. McDonald's Corp.*, 872 S.W.2d 108, 112 (Mo.App. E.D.1994).

Mrs. Gorham testified that she used the comparable sales method in appraising the property, concluding that the property was worth $200,000.00 before the taking, and $171,000.00 after the taking, resulting in a decrease in value of $29,000.00. She testified that the easement caused: damage to the view from the home from loss of trees; increased noise from the highway and decreased privacy from the number of trees lost; the torn up condition of her back yard; and the inability to build a pool across the buried sewer line.

Respondent's expert was not required to use the comparable sales method. "[O]ur Supreme Court has rejected the notion that an appraiser's opinion must be based on specific market data." *Olendorff*, 234 S.W.3d at 497, see also *State ex. rel. State Hwy. Comm'n v. Koberna*, 396 S.W.2d 654, 663 (Mo.1965). "In *Koberna*, the Court held that it is not necessary for an expert's opinion to be based on market data, such as comparable sales, so long as there is other factual basis for the expert's opinion." *Olendorff*, 234 S.W.3d at 497; *Koberna*, 396 S.W.2d at 663. However, in this case, Respondent's expert had no data to back up his opinion and the factual basis of his $0.00 estimate of damages is unclear. Accordingly, we find that Respondent's expert testimony lacked foundation.

■ Even though questions as to the sources and bases of the expert's opinion normally affect the weight, rather than the admissibility, of the opinion, an expert's opinion still "must be founded on substantial information, not mere conjecture or

speculation, and there must be a rational basis for the opinion." *McFarlane*, 207 S.W.3d at 62; *Rigali*, 103 S.W.3d at 845. The opinion should be excluded in cases where the sources relied on by the expert are so slight as to be fundamentally unsupported. *McFarlane*, 207 S.W.3d at 62.

■ "The basic legal principles governing the valuation of real estate and calculation of damages in eminent domain proceedings by expert opinion are well established." *State ex rel. Mo. Highway and Transp. Com'n v. Modern Tractor and Supply Co.*, 839 S.W.2d 642, 648 (Mo.App. S.D.1992). Those principles applicable to a partial taking include the following. *Id.* "When part of a tract of land is condemned, the appropriate measure of damage is the difference between the fair market value of the entire property before the taking and the fair market value after the taking." *Mo. Highway & Transp. Com'n v. Horine*, 776 S.W.2d 6, 12 (Mo.banc 1989); *McDonald's Corp.*, 872 S.W.2d at 111. The value to be considered is the market value at the time of the taking. *Modern Tractor*, 839 S.W.2d at 648.

■ An expert opinion of the value of real property must not be based on speculation. *Id.* "To have probative value expert opinion must be founded upon substantial data, not mere conjecture, speculation or unwarranted assumption. It must have a rational foundation." *Id.* (citation and internal quotation omitted). An expert's opinion of value must not be couched in terms that would mislead a jury. *In re Armory Site in Kansas City*, 282 S.W.2d 464, 472 (Mo.1955). "An expert opinion of value, based upon a false premise, has no evidentiary value." *Modern Tractor*, 839 S.W.2d at 648.

In the instant case, Respondent's expert's opinion that the taking had no adverse effect on Appellants' property was

fundamentally unsupported because he had not examined or assessed the property prior to the taking and had no data or evidence to support his opinion. During his cross-examination, his lack of knowledge of crucial facts supporting Mrs. Gorham's assessment was revealed. When asked how many trees Respondent cut down in Appellants' back yard, Respondent's expert replied, "I have no idea." Then he conceded that he has done appraisals where he assigned value to trees, and that a big tree can cost as much as $1,000.00. Not only did the trees have their own intrinsic value, but Mrs. Gorham testified that they provided a buffer from the highway noise and commercial lights, as well as contributed to the view. In her opinion as an appraiser, houses with better views command higher prices than properties with inferior views. Further, Respondent cut the roots of at least nine other trees on Appellants' property, which will likely die as a result and Appellants will bear the cost of removing them.

Based on the foregoing, we find that Respondent's expert's opinion was not founded upon substantial data but was based on mere conjecture. His opinion failed to take into account the value of the property at the time of the taking, did not assess fair market value as required by statute and case law, and thus was not in proper form. See *McDonald's Corp.*, 872 S.W.2d at 112. Therefore, the expert testimony had no evidentiary value, misled the jury, and should have been excluded. Accordingly, Point I is granted. In light of our resolution of Point I, Appellants are entitled to a new trial on the issue of damages. Accordingly, Point II is granted as well.

### Conclusion

The judgment of the trial court is reversed and this cause is remanded for a new trial on the issue of Appellants' damages.

CLIFFORD H. AHRENS, J., and LAWRENCE E. MOONEY, J., concur.